MINNESOTA THRESHER MANUFACTURING COMPANY *vs.* R. B. LANGDON.

SAME *vs.* THOMAS LOWRY.

July 11, 1890.

| 44 | 37 |
|----|-----|
| 48 | 169 |
| 48 | 190 |
| 48 | 364 |
| 44 | 37 |
| 53 | 132 |
| 44 | 37 |
| 66 | 443 |
| 44 | 37 |
| 80 | 497 |

**Insolvent Corporation—Action to Recover Capital Wrongfully Withdrawn—Who may Bring Suit.**—Upon an adjudication of the insolvency of a corporation, and the appointment of a receiver of its property and effects under the provisions of Gen. St. *c.* 76, the right to recover capital withdrawn and refunded by the corporation to its stockholders without provision for the payment of corporate debts passes to the receiver as the representative of all the creditors; and the right of the creditors, in their own behalf, to maintain such an action under Gen. St. 1878, *c.* 34, § 139, is taken away, or at least suspended during the pendency of the proceedings under chapter 76.

**Same—Order for Sale of "All Assets"—What may be Sold.**—An order of court directing the sale of "all the assets, property, and business" of the insolvent corporation only authorizes the sale of such property as belonged to the corporation, or causes of action which it might have enforced, in its own right, and not causes of action which the receiver might have maintained only in the right of creditors, as, for example, capital withdrawn and refunded by the corporation to its shareholders without payment of the corporate debts.

In each of these cases the plaintiff appeals from an order of the district court for Hennepin county, sustaining a demurrer to the amended complaint.

*Flandrau, Squires & Cutcheon,* for appellant.

*Gordon E. Cole, Hiram C. Truesdale, J. N. Castle,* and *Horace G. Stone,* for respondents.

MITCHELL, J.[1]  While the complaints state two causes of action, yet both are for the recovery of the same thing, to wit, dividends declared and paid to the defendant stockholders by the Northwestern Manufacturing & Car Company, a manufacturing corporation, no

---

[1] Gilfillan, C. J., and Vanderburgh, J., took no part in this case.

part of which had been earned, and which were, therefore, just so much of the capital withdrawn and refunded to the stockholders; the corporation being then, as alleged, insolvent. The dividends were paid between May 10, 1882, and May 10, 1884, while the corporation was still an active and going concern. In May, 1884, in an action commenced by Hospes, one of its creditors, (41 Minn. 256, 43 N. W. Rep. 180,) the corporation was adjudged insolvent, and all its assets and business sequestered, and placed in the hands of a receiver, pursuant to Gen. St. 1878, c. 76. It appears from the complaint, by implication at least, that this action is still pending, and the receivership not yet terminated. The plaintiff, having become a creditor of the corporation by the purchase of claims against it, filed and proved them in that action, and the same have been allowed by the court. Subsequently the court made an order in that action directing a sale of "all the assets, property, and business of said Northwestern Manufacturing & Car Company" at public auction to the highest bidder, by a referee appointed for that purpose, who of course was a mere aid to, or substitute for, the receiver. While the terms of this order are not more fully set out in the complaint, yet, for the purpose of illustrating what will be said hereafter, it may be stated that it directed all these assets of every description to be sold as one property, and not in parcels, as appears in the Hospes Case, referred to. At this sale the plaintiff became the purchaser, and the court confirmed the sale. The amount realized will not pay the creditors over 10 per cent. of their claims. The plaintiff predicates its right to recover from defendants the dividends referred to on two separate grounds, severally constituting the basis of the two causes of action: *First*, as a creditor of the corporation pursuant to Gen. St. 1878, c. 34, § 139, which makes the stockholders liable to any creditor to the amount of the capital stock which has been withdrawn and refunded to them before the payment of all the debts of the corporation for which such stock would have been liable; *second*, as purchaser of the right of action at the receiver's sale, as a part of the assets of the corporation. It must be apparent that these two grounds are inconsistent with each other, and that they cannot both be sound. We will consider them in the order named.

1. The sequestration of the property of a corporation by an adjudication of its insolvency, and the appointment of a receiver of its property and effects, under the provisions of chapter 76, is in the nature of an attachment or execution in behalf of all its creditors. The receiver has substantially the same powers and functions as an assignee in bankruptcy, or a receiver upon a creditors' bill or proceedings supplementary to execution. He succeeds to the rights of the creditors as well as of the insolvent corporation, and has the power to enforce the rights which the creditors, but for the proceedings, might have enforced in their own behalf. The proceedings were intended to provide a complete and full remedy; and this they could not do unless their scope is to apply, to the satisfaction of the creditors, all property which, but for the proceedings, they could have so applied. *Farmers' Loan & Trust Co.* v. *Minneapolis Engine Works,* 35 Minn. 543 (29 N. W. Rep. 349.) Everything becomes assets in his hands, and hence in the custody of the law, which were assets as to creditors, as well as what was assets as to the corporation. Among the rights which pass to the receiver as the representative of the creditors is the right to recover property conveyed by the corporation in fraud of its creditors, or capital withdrawn and refunded to the stockholders without provision for full payment of the corporate debts. This right of the receiver does not depend upon any express statute granting it, but rests upon the general equitable doctrine that the capital of a corporation is a trust fund for the benefit of its creditors, and that those to whom it has been refunded will be held trustees for their benefit. It follows that a receiver of an insolvent corporation, as the representative of its creditors, can assert many claims against stockholders which the corporation itself could not have maintained. This is clearly contemplated, and even expressly provided for, in the various provisions of chapter 76, relating to such proceedings. Therefore the right of the receiver of the Northwestern Manufacturing & Car Company to recover these unearned dividends paid to its stockholders by the corporation out of its capital cannot be doubted; and it cannot be that this right of the receiver and a right of creditors, each in his own behalf, to maintain actions under section 139 to recover the same thing, can both exist at the same time. If

so, it would lead to the worst confusion and conflict, and often defeat the main object of sequestration proceedings under chapter 76. The right of the individual creditor and of the receiver were never intended thus to conflict. When sequestration proceedings against an insolvent corporation have been instituted, all property and choses in action which the receiver may claim or enforce in the right of creditors are as much *in custodia legis* as those which the corporation itself might have claimed or enforced. The right of action given to the creditor under section 139 was evidently intended to apply only in the case of an active corporation, or one which had not been adjudged insolvent; but the institution of sequestration proceedings disables the creditors to go on, each in his own behalf, to reclaim capital withdrawn and refunded to shareholders in fraud of their rights. That right vests in the receiver, and the rights of creditors must be worked out through him.

We are not unmindful that in *Patterson* v. *Stewart,* 41 Minn. 84, (42 N. W. Rep. 926,) we held that the fact that the affairs of a corporation had been placed in the hands of a receiver does not take away or suspend the creditors' right of action, under section 142, against the directors. The question was not the prominent one in the minds of the court in that case, our attention being more especially directed to a consideration of the proper form of action, and who were necessary parties; and it must be admitted that the other question did not receive, at least from the writer, the degree of consideration which it perhaps deserved. There may, therefore, be sufficient doubt about the correctness of our decision on that question to entitle it to re-examination, if the point should ever again arise. But there is clearly room for a distinction between the liability of stockholders to account for capital of the corporation which has been withdrawn and refunded to them in fraud of the rights of creditors, and the liability imposed on directors by section 142 for the benefit of particular creditors as a sort of penalty for violations of statute, and which never was any part of the corporate property. Whatever may be said of the latter, we are clear that the right to enforce the former vests in the receiver as trustee for all the creditors, and that the right of the individual creditors to sue under section 139, if

not absolutely taken away, is at least suspended during the pendency of the proceedings under chapter 76.

2. We come now to consider whether the right of action to recover these dividends passed to plaintiff by its purchase of the assets and property of the corporation at the sale under the order of the court. The line of argument by which it is sought to maintain the affirmative of this question is substantially as follows: That the payment of unearned dividends by a corporation out of its capital is wholly *ultra vires;* that therefore the corporation itself might have maintained an action to recover them, and hence the plaintiff can maintain such an action in the right of the corporation by virtue of its purchase of all its property and assets. It becomes important in this connection to consider in what sense, and as to whom, the act was *ultra vires.* The term *"ultra vires"* is used in two different senses; *first* as to the state, meaning an act which transcends the powers conferred by law on the corporation,—something which is not within the scope of the powers of a corporation to perform under any circumstances, or for any purpose, as, for example, where a corporation authorized only to build a railroad engages in banking. This is the primary, and really only proper, sense of the term. But it is also used in a secondary sense, as something beyond the power of the majority to bind dissenting stockholders, or something in violation of the legal rights of creditors, and sometimes in the sense merely of something beyond the authority of corporate agents or executive officers. The primary meaning of the term applies only when the public is concerned; the secondary meanings, when the question is between the corporation and its shareholders or creditors, or other parties dealing with it, or between it and its agent or executive officers. This twofold use of the term is unfortunate in obscuring a subject in itself sufficiently perplexing. To it is especially due the confusion that often exists as to what *ultra vires* acts may, and what may not, be ratified, and as to who, or what classes of persons, may object to them. It is particularly misleading in the examination of English cases, in which the term *"ultra vires"* seems to be applied indiscriminately to acts which simply exceed the powers conferred by what they call the act of settlement upon the officers as the agents of the shareholders,

and acts which transcend the powers conferred upon the entire corporation by the act of parliament. Most, if not all, transactions relating to the disposition of corporate property, except perhaps in the case of trust corporations, involve the doctrine of *ultra vires,* if at all, only in a secondary sense. In the absence of a prohibitory statute, a corporation may dispose of its own property as it pleases to any one, for any or no reason, subject only to the qualification that it may not do so, without express power in this behalf, against the wish of any single shareholder, and may not do it so as to destroy the fund to which creditors have a right to look for payment; and in such cases it is only the objecting shareholders, or the creditors whose rights are affected, who can object. A court of equity will then, at the instance of the proper parties, interpose to prevent the diversion or disposition of corporate capital, or to compel its restoration, or to declare it a trust fund in the hands of those who have held it back, or to whom it has been paid over. It follows that an action to compel the repayment of capital which has been withdrawn and refunded to shareholders may be maintained at the instance of the dissenting shareholders, or of creditors, or a receiver as their representative, which the corporation itself, merely in its own right, could not maintain.

In the present case, it is not alleged that the payment of these dividends was the unauthorized act of some corporate agent. On the contrary, it is alleged that the corporation itself declared and paid them. Neither is it alleged that they were paid under a mistake of fact, or by reason of any fraud on part of the defendants against the corporation. The right to recover is rested on the single, bald fact that they were unearned, and hence paid out of the capital. We have been referred to no case, and have found none, which holds that on such a state of facts the corporation, in its own right alone, could recover back money thus voluntarily paid by it to its stockholders. Counsel for plaintiff refers us to numerous cases, mostly English, as so holding; but an examination of them will, we think, show that they are all referable to the two following classes: *First,* suits by dissenting stockholders to prevent the payment of such dividends and diversion of capital, or to compel its restoration; *second,* suits by

creditors, or by a receiver or liquidator in their behalf and in their right, to reach capital withdrawn, or unearned dividends paid, in fraud of their rights. To the first class belong such cases as *Bloxam* v. *Metropolitan Ry. Co.*, L. R. 3 Ch. 337; *Holmes* v. *Newcastle Abattoir Co.*, 1 Ch. Div. 682; *Guinness* v. *Land Corp.*, 22 Ch. Div. 349; *Carlisle* v. *Southeastern Ry. Co.*, 1 Macn. & G. 689; and *Salisbury* v. *Metropolitan Ry. Co.*, 38 Law J. Ch. 249. To the second class belong *Stringer's Case*, L. R. 4 Ch. 475; *Rance's Case*, L. R. 6 Ch. 104; *In re National Funds Assurance Co.*, 10 Ch. Div. 118; and *In re Alexandra Palace Co.*, 21 Ch. Div. 149. Counsel claims that the latter class of cases are in point because in England the liquidator of an insolvent corporation merely stands in the shoes of the company, and can only maintain actions which it could have maintained. We think counsel is in error as to the fact; for, as we understand it, at least ever since "the companies act" of 1862, upon the winding up, either voluntary or involuntary, of an insolvent company, the liquidator represents the creditors as well as the company, and hence may in their right assert rights which the company itself could not have asserted; in short, that he has all the powers of a receiver in this country, and that, as the representative of creditors, he may compel the repayment of capital which has been withdrawn and refunded to shareholders in fraud of creditors, and that the English courts now virtually place this right upon what is usually called the "American Doctrine," that the capital of a corporation is a trust fund for the payment of creditors. The only real difference that we can discover is that, instead of having to bring an action to recover it, its repayment may be summarily ordered by the court upon the application of the liquidator; such application being in the interest of creditors, as is expressly recognized in *Rance's Case*. See, particularly, *In re National Funds Assurance Co., supra*. The only American case which even seems to lend any aid to plaintiff's contention is *Lexington Ins. Co.* v. *Page*, 17 B. Mon. 412. What is there said on the subject is *obiter*, and all that it amounts to is that dividends paid under the operation of mutual mistake may be recovered back by the corporation, —a proposition which is probably true; but whether the application

sought to be made of it to the facts of that case was a proper one may admit of doubt.

Our conclusion is that the corporation itself, in its own right, could not have maintained any action against the defendants for the recovery of these dividends; that the receiver could do so, not in the right of the corporation, but only in the right of creditors. This is only important in the present case for the purpose of determining whether this right of action passed to plaintiff by its purchase of "all the assets, property, and business of the Northwestern Manufacturing & Car Company." It may indeed admit of doubt whether any such a right of action is assignable, and whether a court has any power to order it to be sold. It is, in effect, a right of action to recover property transferred or disposed of in fraud of creditors. The sale of such a right of action by an assignee in bankruptcy, or a receiver of an insolvent, is, we apprehend, without precedent. The only standing of an assignee or receiver to recover property transferred in fraud of creditors is as trustee for the creditors; and, as he cannot sell his powers and duties as such trustee, it is somewhat difficult to see how he can transfer the right to attack such transfers. See *Morris* v. *Morris*, 5 Mich, 171; *Brush* v. *Sweet*, 38 Mich. 574; *McMasters* v. *Campbell*, 41 Mich. 513, (2 N. W. Rep. 836;) *Dickinson* v. *Seaver*, 44 Mich. 624, (7 N. W. Rep. 182;) *Prosser* v. *Edmonds*, 1 Younge & C. 481; *Milwaukee & Minn. Ry. Co.* v. *Milwaukee & Western R. Co.*, 20 Wis. 174; *Vose* v. *Grant*, 15 Mass. 505; *Mann* v. *Fairchild*, 41* N. Y. 106.

But admitting, for the sake of argument, that such a cause of action is capable of being assigned, and that a court has the power to order its sale, to do so is so clearly against public policy, so fraught with the grossest abuses, and against the plainest dictates of common justice, that an order of sale should never be construed as authorizing such a thing unless such construction is compelled by the clearest and plainest language. Such a practice would result in the grossest injustice to creditors, and lead to the most unconscionable speculations by outsiders, who might buy for a mere trifle causes of action of the most indefinite and even unknown amount and nat-

ure, and then institute suits of the most speculative character.     The abuses likely to result from such a thing are well illustrated by the present case.     The Northwestern Manufacturing & Car Company paid in all $300,000 of these dividends; and, if the plaintiff bought the right to recover any part of these, it bought the right to recover the whole.     Referring again, by way of illustration, to what appeared in the *Hospes Case*, no part of these, or the right to recover them, was ever scheduled or inventoried by the receiver, or even named in either the order or notice of sale as a part of the assets of the corporation.     Presumably, the very existence of any such claim, certainly its nature or amount, would be unknown to the bidders at the sale, and perhaps to the receiver himself.     What probability is there, then, that the lump sale of the "assets and property" of the corporation realized a cent more because of these apparently unknown and undisclosed rights of action?     To illustrate still further:     Suppose this insolvent corporation had issued $1,000,000 of professedly paid-up stock, when in fact nothing had been paid on it.     The holders might be liable to creditors for this amount as for unpaid stock subscriptions, although the corporation itself could not have asserted any such claim against them.     But, if plaintiff at the sale bought the right to recover these dividends, on the same grounds it must be held to have purchased these claims, aggregating $1,000,000, against those to whom this stock was issued, although nothing of the sort was named or suggested as any part of the assets of the corporation. A more successful method of sacrificing the rights of creditors, and encouraging a most unjust system of speculation and vexatious litigation, could not well be devised.     The order of sale referred to, even under the most limited construction, is certainly a very unusual and sweeping one; but what would be said of it if it should be construed as including in the expression, "all the assets, property, and business" of the insolvent, not only all property which belonged to the corporation as such, but also all those unnamed, and perhaps then undiscovered, causes of action which the receiver might have maintained, not in the right of the corporation, but solely in the right of creditors?     The order ought not and cannot be construed, in any event, as authorizing the sale of anything except such assets as be•

longed to the corporation itself, and passed to the receiver in its right. The rights of creditors cannot be swept away in this loose, wholesale manner, where bidders would have no means of knowing whether they were buying claims to the amount of $1,000 or $1,000,-000. See *Milwaukee & Minn. Ry. Co.* v. *Milwaukee & Western R. Co., supra.*

We have not referred to the somewhat more comprehensive description alleged to have been embodied in the notice of sale, as it could not enlarge the scope of the order itself. Our conclusion being that for the reasons given the plaintiff cannot maintain this action either as "creditor" or "purchaser," it becomes unnecessary to follow counsel over the wide range which their arguments have taken on other questions.

Orders affirmed.