MYRON MCKUSICK *vs.* SEYMOUR, SABIN & Co. (First Case.)

Argued Dec. 14, 1891. Decided Jan. 18, 1892.

**Stockholders' Liability.**—Article ten, (10,) section three, (3,) of the constitution of the state, relating to the liability of stockholders for corporate debts, *held* to be self-executing. Following *Willis* v. *St. Paul Sanitation Co.*, *ante*, p. 140.

**Practice—How Such Liability may be Enforced.**—The individual liability of stockholders for corporate debts may be enforced in a sequestration proceeding against the corporation, under 1878 G. S. ch. 76, upon the application or complaint of any creditor who has become a party to the proceedings. Following *Arthur* v. *Willius*, 44 Minn. 409.

Appeal by John F. Meagher, Amerst H. Wilder, P. H. Kelly, and other stockholders of Seymour, Sabin & Co. from an order of the district court, Washington county, made July 14, 1891, overruling their demurrer to the supplemental complaint of the Minnesota Thresher Manufacturing Company filed in the insolvency proceedings pending against said first-named corporation.

Seymour, Sabin & Co. was a business corporation organized under 1878 G. S. ch. 34, § 109. On May 12, 1884, it confessed judgment in the district court in favor of Myron McKusick. Execution was issued on the judgment, and returned wholly unsatisfied. Thereupon McKusick commenced an action in the district court, Washington county, setting forth these facts, and praying that the property of the corporation be sequestered, and a receiver appointed to continue its business until a sale could be made under the order of the court. 1878 G. S. ch. 76, § 9. On the same day an order was granted, requiring the corporation to show cause before *McCluer*, J., why such receiver should not be appointed at once. The parties appeared, and by consent J. C. O'Gorman was appointed such receiver of the property of the corporation, and empowered to continue its business, employ and discharge officers, prosecute and defend actions, and wind up its affairs.

The receiver thus appointed qualified and entered upon the discharge of his trust. On September 9, 1884, the district court made

another order requiring all the creditors of Seymour, Sabin & Co. to exhibit their claims within six months after the first publication of the order, and become parties to the proceeding, and in default thereof that they be precluded from all benefit of the judgment, and from sharing in the distribution of the assets realized under such judgment.

The Minnesota Thresher Manufacturing Company, another corporation, thereupon presented and filed its claim against Seymour, Sabin & Co., and afterwards, on August 15, 1889, by leave of the court, presented and filed its supplemental complaint (1878 G. S. ch. 76, § 16) on behalf of itself and all the other creditors, and against all the stockholders of Seymour, Sabin & Co., (about 60 in number,) to enforce the liability given by the constitution, art. 10, § 3. An order was entered making the stockholders parties to the action, and requiring them to enter their appearance and to answer this complaint, and providing for the service of a summons upon each in conformity with the order.

This complaint stated that the debts of Seymour, Sabin & Co. exceeded $2,250,000, all incurred subsequent to July 5, 1881, of which the thresher company held at first $873,186.33, and had since purchased $1,043,598.71 more; that the total assets of Seymour, Sabin & Co. had been sold, and had realized only $45,000; that its capital stock was $1,650,000, divided into shares of $50 each, and that Meagher, Wilder, Kelly, and about 60 others held this stock. The complaint prayed that each of said stockholders account with the receiver and said Thresher Company and the other creditors concerning said debts, assets, and their liability as stockholders, and pay into court an amount equal to the par value of their respective holdings of stock, and that the same be distributed among the creditors.

Many of the stockholders appeared and demurred to this complaint upon grounds stated in the opinion, and it was stipulated that M. D. Grover, Esq., should, as referee, hear argument and report to the court what order he advised to be made upon the demurrers. He heard argument, and reported July 14, 1891, that the demurrers should be overruled, and it was so ordered. The stockholders appealed to this court.

*Horace G. Stone,* for some of appellants.

The insolvency or bankruptcy of a corporation, or the appointment of a receiver for it, does not dissolve it or wind it up. *State* v. *Merchant,* 37 Ohio St. 251; *Valley Bank & Sav. Inst.* v. *Ladies' Congregational Sewing Society,* 28 Kan. 423; *Moseby* v. *Burrow,* 52 Tex. 396; *Pringle* v. *Woolworth,* 90 N. Y. 502, 510; *De Camp* v. *Alward,* 52 Ind. 468; *Rollins* v. *Clay,* 33 Me. 132; *Reichwald* v. *Commercial Hotel Co.,* 106 Ill. 439; *Kansas City Hotel Co.* v. *Sauer,* 65 Mo. 279; *Osgood* v. *Maguire,* 61 N. Y. 524; *National Bank* v. *Insurance Co.,* 104 U. S. 54; *Bank of Bethel* v. *Pahquioque Bank,* 14 Wall. 383; *Boston Glass Manufactory* v. *Langdon,* 24 Pick. 49; *Germantown Ry. Co.* v. *Fitler,* 60 Pa. St. 124.

The courts have always held that a right to enforce a liability created by law, except in a case to dissolve a corporation and adjust all its affairs, is independent of, separate from, and not to be consolidated with, an action brought for the sole purpose of sequestrating the assets of the insolvent corporation. This court has held that a pending action to sequestrate the assets was not an action to sequestrate the liabilities created by statute. Until this court shall expressly overrule *Patterson* v. *Stewart,* 41 Minn. 84, it must be assumed, not only on principle, but on authority, that an action under 1878 G. S. ch. 76, § 9, to sequestrate assets, has no connection with an action under section seventeen (17) to sequestrate liabilities created by statute; and that such actions cannot be properly joined, except in a suit to adjust all the affairs of a corporation which is in process of dissolution. *Judson* v. *Rossie Galena Co.,* 9 Paige, 598; *Wiles* v. *Suydam,* 64 N. Y. 173; *Farnsworth* v. *Wood,* 91 N. Y. 308.

In the case at bar McKusick brought a suit against the corporation Seymour, Sabin & Co. for the sole purpose of sequestrating its assets. He prosecuted that suit to judgment, and, as a complete execution on that judgment, the assets were sequestrated, and the receiver appointed in whom the title to such assets was vested. At that point the action was ended, except as to such means as might be taken by the receiver to enforce the judgment which had been rendered. The commencement and the end of the action were for the purpose of sequestrating the assets. Nothing more was asked

for in any of the pleadings; nothing more was granted by the judgment which was entered. Years afterwards the Minnesota Thresher Manufacturing Company, a creditor of the corporation, files an alleged intervention or supplemental complaint in the receivership action, by which it seeks to bring new parties defendant into that action, and to introduce an entirely new cause of action,—one between the creditor and the parties who were then for the first time made defendants. The cause of action which the creditor thus seeks to enforce is not assets of the corporation. The receiver never had any right to recover upon it; he never was vested with any title to it. The collection of this double liability was entirely foreign to anything asked for in the complaint of McKusick, or granted by the judgment which appointed the receiver. This is an attempt after McKusick, the plaintiff, has recovered judgment, and after that judgment has been fully carried out by execution, to introduce into that action a new action between parties whom the receiver does not represent, and against defendants who were not parties to the original action. It cannot be done under *Arthur* v. *Willius,* 44 Minn. 409, for no ground for winding up the corporation existed when McKusick filed his original complaint.

*Warner, Richardson & Lawrence,* for other appellants.

This complaint cannot stand as an amended complaint or as a supplemental complaint, or as an intervention complaint, under the Code. It is a fundamental rule of pleading in any judicial procedure that the claimant's cause of action, if any, must have been complete and perfect before his action was commenced. All the facts essential to his cause of action must have previously occurred. This rule applied to cases at law and in equity as well. If, in either class of cases, any of these essential and pre-existing facts were omitted from the original narrative, they were to be introduced into the record, if at all, by way of amendment to the original complaint. Any subsequent complaint, setting out additional facts existing before suit, if presentable at all, supplanted and superseded the original complaint, and stood as an amendment of it. But, owing to the nature of the relief obtainable in equity cases, facts occurring after a commencement of suit could sometimes modify or extend the relief originally

sought; but, owing to the nature of the relief to be had in common-law cases, no such alteration ever could be so effected. Hence it was that supplemental complaints could be made in equity cases, but not in common-law actions. If facts, sufficient to constitute any cause of action at all, had not occurred before suit, the rule was the same in both classes of cases. The suit was simply premature, and its dismissal inevitable. No subsequent occurrence could inspire the action with vitality *nunc pro tunc.* In equity cases begun with full and perfect right to some relief, these subsequently occurring facts, warranting further or modified relief, were to be introduced, if at all, not by an amendment of the original narrative, but only by filing an additional narrative, called a " supplemental complaint." The Code did not create any new rules on this subject, but merely declared those already existing. 1866 G. S. ch. 66, §§ 103, 104, 108.

It must be obvious that the pleading under consideration cannot stand as an amendment of the original McKusick complaint, if it presents facts wholly outside of the original complaint; some of which existed before, and some of which occurred after, it was made. If it stated a cause. of action at all, it was other and different from the cause of action set up in the McKusick complaint, and against strangers to that suit. It is equally clear that the paper cannot stand as a supplemental complaint under the Code, because the obligations charged are based on facts that existed anterior to the McKusick action, and also because these new facts have no bearing on the cause of action set out in the McKusick complaint. *Lowry* v. *Harris,* 12 Minn. 255, (Gil. 166.) It remains to consider whether this paper can stand as an intervention complaint under 1878 G. S. ch. 66, § 131. That statute applies only when the intervener is directly concerned in a subject-matter already in litigation, and seeks to prosecute, or defend, or lay claim to that same matter. But this complaint is addressed to causes of action not already in litigation, and against strangers to that case. *Shepard* v. *Murray Co.,* 33 Minn. 519.

Assuming then, that this complaint was not authorized by the Code, it must stand, if at all, upon some provision of chapter seventy-six (76.) As the proceeding taken in the McKusick case could

not have been taken at all without the aid of some statute creating the jurisdiction, and as the only statute warranting it was chapter seventy-six, (76,) section nine, (9,) therefore that proceeding must be deemed to have been taken under the authority of that provision. A judgment creditor's suit against a corporation, under this statute, had a force and effect other than one against an individual. It was to operate as the initiation of an insolvency proceeding, affecting all the stock, etc., and inuring to the benefit, not of the plaintiff alone, but of all the corporate creditors. The sequestration was to render all the stock, etc., *in custodia legis.* The administration was not to be partial, but complete. *Morgan* v. *New York & A. R. Co.,* 10 Paige, 290, 292; *Spooner* v. *Bay St. Louis Syndicate,* 44 Minn. 401; *Minnesota Thresher Mfg. Co.* v. *Langdon,* Id. 37.

The statutory jurisdiction conferred by chapter seventy-six, (76,) sections nine, (9,) ten, (10,) extends only to an administration of the stock, property, choses in action, and effects of the corporation, and was exhausted when such administration was completed. It was not competent to proceed in that case upon these obligations, unless they constituted, within the true meaning of our constitution, art. 10, § 3, *quasi* stock. If they formed no part of the stock referred to in 1878 G. S. ch. 76, § 9, then the fund to be accumulated through their collection was one wholly outside of the scope of that case. If these alleged obligations are held to be outside the scope of chapter seventy-six, (76,) section nine, (9,) and so outside the scope of the original McKusick case, then it must follow that they cannot be enforced in that action at all, and that an independent action should have been brought based on facts complete and sufficient to warrant jurisdiction and equitable relief.

The provisions of 1878 G. S. ch. 76, sections twelve (12) to twenty-three, (23,) both inclusive, were designed to apply only to such corporations as those referred to in section twelve, (12,) and sections nine (9) and ten (10) only to other corporations. The historic and well-authenticated fact is that all said provisions after section eleven (11) were actually intended by their framers to apply only to corporations of the classes mentioned in section twelve (12.) They have been so judicially interpreted and applied. When statutes are adopted

from another jurisdiction, they are deemed to have been so adopted because of the construction already placed upon them in the jurisdiction whence taken. The language used is so arranged as to warrant that construction and those decisions. All of our sections fifteen (15) to twenty-two, (22,) both inclusive, are New York sections forty-three (43) to fifty, (50,) both inclusive, and were devised and formulated just as they now stand by the New York revisers; and they said in their notes that they actually were designed to apply, to corporations covered by the New York section thirty-nine, (39,) our section twelve, (12,) and the language used confirms that statement. N. Y. Rev. St. 1836, vol. 3, p. 755; *Mann* v. *Pentz*, 3 N. Y. 415; *Adler* v. *Milwaukee Patent Brick Mfg. Co.*, 13 Wis. 57.

*Flandrau, Squires & Cutcheon* and *F. B. Kellogg*, for respondent.

In filing its supplemental complaint in this action, respondent has pursued the proper practice. It can institute proceedings to enforce the individual liability of the shareholders in this sequestration action. Resort need not be had to a new and original action in the nature of a suit in equity. This proposition is established by the decision of this court in *Arthur* v. *Willius*, 44 Minn. 409. This supplemental complaint is filed under the authority of 1878 G. S. ch. 76, §§ 9, 15, 16. The practice adopted may, doubtless, be justified by chapter sixty-six, (66,) sections forty-three, (43,) one hundred and thirty-one, (131,) or by chapter seventy-six, (76,) section seventeen, (17.) The original law which formed the basis of that part of our chapter seventy-six, (76,) beginning with section nine, (9,) is to be found in an act of the legislature of New York entitled "An act to prevent fraudulent bankruptcies by incorporated companies, to facilitate proceedings against them, and for other purposes." Laws N. Y. 1825, ch. 325, p. 449. Sections nine (9) and ten (10) of our chapter seventy-six (76) are substantially copied from section five (5) of this New York act. Sections fifteen (15) to twenty-two (22) of our chapter seventy-six (76) were taken from N. Y. Rev. St. 1829, §§ 43–50. But the revisers of the New York statutes did not state in their notes that it was their intention that these sections should refer solely to moneyed corporations, and it does not seem to us either necessary or natural to construe them to have such an exclusive ref-

erence. And it was not stated by the revisers, nor was it ever held by the New York courts, that sections forty-three (43) to fifty, (50,) corresponding to our sections fifteen (15) to twenty-two, (22,) were intended to be in aid of, or had any special connection with, any of the provisions now found in sections eleven (11) to fourteen (14) of our law. The provisions thus embodied in the New York statutes of 1829 were exactly copied, both as respects verbiage and arrangement, into the second and third editions of the Revised Statutes of New York, and from one of these editions were taken bodily and enacted by the legislature of the territory of Wisconsin. Wis. Rev. St. 1849, ch. 114, p. 594. From Wisconsin they were inherited by the territory of Minnesota, and appear in the first edition of the Revised Statutes of Minnesota in practically their original form, except that in the latter statutes such changes of verbiage were made as had been rendered appropriate by the adoption of the reformed practice by Minnesota. In the form which these sections thus assumed, they continued to exist in the compilation of 1858, and to be part of the laws of the state until the Revision of 1866, when chapter seventy-six (76) was altered to practically its present form. At an early day the supreme court of Wisconsin regarded the doctrine of *Mann* v. *Pentz*, 3 N. Y. 415, 419, to be the settled rule in New York, and, following the decision of the New York court, adopted it as the official construction of the Wisconsin statute. *Adler* v. *Milwaukee Patent Brick Mfg. Co.*, 13 Wis. 57. Subsequently, however, an amendment to the Wisconsin law was made by which the language was changed to read: "Whenever any creditor of *any* corporation seeks to charge the directors," etc. This alteration was held by the supreme court of Wisconsin sufficient to make the section apply to all corporations. *Sleeper* v. *Goodwin*, 67 Wis. 577.

What our own supreme court would have held in regard to the application of these sections, prior to the Revision of 1866, we are not prepared to say, although it is not improbable that it would have followed the decisions of the courts of New York and Wisconsin. But, before our court was called upon to construe these sections, the scope of their application was entirely changed by statute. By the Revision of 1866, not only was section twelve (12) of the chapter dropped,

and other changes made significant of an intention to give a general scope to each of the sections, but section one (1) of chapter seventy-six, (76,) as it now stands, (which previously had been contained in 1858 C. S. ch. 66, § 1,) was prefixed to this statute, thus entirely altering the purview of many of its provisions. This chapter embraces all corporations. Now, if it merely means that within the limits of the chapter all classes of corporations are treated, it simply makes a statement which, if true, is self-evident and unnecessary; and, if it be not true, is not only ineffectual, but misleading. If it does not mean this, what does it mean? Manifestly there is but one other meaning to be attached to it. Elaborated, and the ellipses supplied, it should read: "Each of the provisions of this chapter embraces in the scope of its application all classes of corporations." No other meaning can be conceived.

This court has substantially held that this chapter applies to all corporations and associations having any corporate rights. *Allen* v. *Walsh*, 25 Minn. 543, 555; *Johnson* v. *Fischer*, 30 Minn. 173, 176; *Merchants' Nat. Bank* v. *Bailey Mfg. Co.*, 34 Minn. 323, 326; *Patterson* v. *Sewart*, 41 Minn. 84, 92; *Arthur* v. *Willius*, 44 Minn. 409; *Spooner* v. *Bay St. Louis Syndicate*, 47 Minn. 464.

MITCHELL, J. This case comes up on appeal from an order overruling the so-called "supplemental complaint" of the Minnesota Thresher Manufacturing Company, a creditor of Seymour, Sabin & Co., a corporation organized under 1866 G. S. ch. 34, tit. 2. The facts alleged in this complaint are as follows: Upon the complaint of McKusick, a judgment creditor of Seymour, Sabin & Co., after execution issued and returned unsatisfied, a decree or judgment had been rendered sequestrating all the property, things in action, and effects of the corporation, and appointing a receiver of the same. The receiver still continues in the discharge of his duties, but it appears that the corporation is hopelessly insolvent, and has not property or effects sufficient to pay over two (2) per cent. of its debts. The Minnesota Thresher Manufacturing Company, in pursuance of an order of court, exhibited its claims against the corporation, and became a party to the sequestration proceeding. Subsequently, in behalf of itself and all other creditors who had exhibited their claims, it filed

its so-called "supplemental complaint" against all the stockholders of the corporation, having first obtained an order of court allowing it to do so, and requiring the stockholders thus impleaded to appear and defend.    In obedience to this order the stockholders (appellants here) appeared, and demurred to the complaint.    The object of the complaint is to recover in this sequestration proceeding from the stockholders on their individual liability for corporate debts under article ten, (10,) section three, (3,) of the constitution.    That this section of the constitution is self-executing, and creates a liability on the part of each stockholder for corporate debts in a sum equal to the amount of stock held or owned by him, has been determined in the case of *Willis* v. *St. Paul Sanitation Co.*, *ante*, p. 140, (50 N. W. Rep. 1110,) just decided.    Inasmuch as it appears that these appellants had become stockholders before the indebtedness constituting the claims of the thresher company was incurred, and that they have always since continued to be stockholders, questions as to the amount of their liability that may arise in view of the fact that their holdings of stock have varied in amount at different times during the intervening period are not involved in this appeal.

The only remaining question is merely one of practice, viz., whether this "double liability" of stockholders can be thus enforced in this sequestration proceeding at the instance or upon the complaint of a creditor who has become a party to it.    Unless to be overruled, *Arthur* v. *Willius*, 44 Minn. 409, (46 N. W. Rep. 851,) is decisive of this question, for, notwithstanding an attempt of counsel to do so, that case cannot be distinguished from the present.    To the same effect, by implication at least, is the more recent case of *Spooner* v. *Bay St. Louis Syndicate*, 47 Minn. 464, (50 N. W. Rep. 601.)    As rules of practice are but a means to an end, and ordinarily, as in this case, do not go to the merits of a controversy, such questions should not, as a general rule, occupy an extensive space in the decisions of courts of last resort; and, if a rule is once established which works well in practice, the mere fact that it may be technically erroneous is not necessarily a sufficient reason for changing it by overruling former decisions.    Although counsel for appellants do not entirely agree among themselves in their conclusions as to what is

the proper method of enforcing such a liability against stockholders, yet all their arguments against the practice adopted in this case are mainly what may be called "historical,"—that is, based upon the history of 1878 G. S. ch. 76, and the construction put upon it in the state of New York, from which most of its provisions, particularly sections fifteen (15) to twenty-two, (22,) inclusive, were originally borrowed, as part of our 1851 R. S. ch. 77, and which had been construed in *Mann* v. *Pentz,* 3 N. Y. 415, as applying only to "moneyed corporations," referred to in section twelve, (12.)

The burden of the arguments is that, in adopting this statute, we also adopted this construction, although one of the counsel seems to take the ground that only sections fifteen (15) and sixteen (16) apply to actions brought under section twelve, (12,) and that section seventeen (17) and those following refer to an action to be brought by creditors only, and different from that provided for in section nine (9) or in section twelve, (12,) and that only the corporate assets, properly so called, can be sequestered in an action under section nine, (9;) while another counsel, although seeming to claim that all of the sections from fifteen (15) to twenty-two, (22,) inclusive, apply only to actions brought under section twelve, (12,) concedes that a receiver, where one is appointed, may enforce this liability of stockholders, and claims that he alone can do so, and that it cannot be done as attempted in this case, upon the complaint or application of a creditor.    It is difficult to perceive any good reason why one method of enforcing the liability of stockholders should obtain in the case of moneyed corporations and another in the case of other corporations; or one method in actions whose primary object is to dissolve the corporation, and another in actions "to sequestrate its stock, property, things in action, and effects," which almost always results in practical dissolution.    But, without stopping to consider what would have been the proper construction of the statute of 1851 as it originally stood, or how far the construction given to it in New York would have been controlling, had the question arisen prior to the adoption of our Revision of 1866, these considerations have now but little weight. In the Revision of 1866, chapters 76 and 77 of the Statutes of 1851 were, with certain changes and modifications, consolidated into one,

entitled "Actions Respecting Corporations." The first four sections of the new chapter were taken from chapter seventy-six, (76,) and the remainder from chapter seventy-seven, (77;) section twelve (12) of the latter being omitted entirely. The first section of the new chapter declares that "this chapter embraces all corporations, including in such designation all associations having any corporate rights, whether created by special acts or under general laws." As long ago as *Allen* v. *Walsh*, 25 Minn. 543, 555, it was said that "this chapter applies to *all* corporations and associations having any corporate rights," from which it is evident that the court construed the first section as making applicable to all corporations all the provisions of that chapter which were not expressly limited in their application. And while it is true that the question in that case was the proper method of enforcing the liability of stockholders of a bank, yet there is not a suggestion anywhere in the opinion that any of the provisions on that subject in chapter seventy-six (76) were applicable only to moneyed corporations, or to actions to dissolve the corporation. It is very evident that the court did not then understand that chapter seventy-six (76) made any such distinctions between different kinds of corporations or different kinds of actions as are now sought to be made. The same thing is true of the cases of *Johnson* v. *Fischer*, 30 Minn. 173, (14 N. W. Rep. 799;) *Merchants' Nat. Bank* v. *Bailey Mfg. Co.*, 34 Minn. 323, (25 N. W. Rep. 639;) *Farmers' Loan & Trust Co.* v. *Minneapolis E. & M. Works*, 35 Minn. 543, (29 N. W. Rep. 349;) *Patterson* v. *Stewart*, 41 Minn. 84, (42 N. W. Rep. 926;) *Minnesota Thresher Mfg. Co.* v. *Langdon*, 44 Minn. 37, (46 N. W. Rep. 310;) *Densmore* v. *Shepard*, 46 Minn. 54, (48 N. W. Rep. 528, 681,)—and every other case in which the provisions of this chapter have been considered or referred to.

It must be admitted that some of the expressions used in sections fifteen (15) and sixteen (16) seem to indicate that they may refer exclusively to proceedings brought under sections eleven (11) and twelve, (12,) but there is nothing of the kind in section seventeen, (17,) or any of the subsequent sections. They are general enough in their terms to apply to any proceeding brought under this chapter, and are amply sufficient to authorize the present proceeding, even if sections

fifteen (15) and sixteen (16) be held inapplicable. It is hardly to be supposed that section seventeen (17) was intended to require a separate and independent action to be brought by creditors to enforce the liability of stockholders when a sequestration proceeding and a receivership against the corporation was already pending. The confusion and conflicts that would arise under any such practice are apparent. If such an action were brought it would, under the doctrine of *Allen* v. *Walsh, supra,* and other cases, have to be a suit against all the stockholders and in behalf of all the creditors who might choose to become parties to it. A receiver would have to be appointed, and an account taken of the property and debts due to and from the corporation, all of which has to be done in a sequestration proceeding. The stockholders would only be compelled to contribute the deficiency, which could only be ascertained after the corporate assets were all distributed among the creditors, which has also to be done in the sequestration proceeding, if one is pending. The difficulties in working out equity and equality among stockholders and creditors under any such divided and double procedure are manifest. It would result in very many of the very evils deprecated in *Allen* v. *Walsh.* All these difficulties would be entirely obviated by enforcing the liability of stockholders in the same proceeding in which the corporate assets, properly so called, are sequestered. It is entirely consistent with the established equity jurisdiction, and in accordance with established equity practice, to forestall a multiplicity of actions by bringing all the litigation into its grasp in one suit for a general accounting and a complete adjustment of all rights. Nor, in case certain stockholders are liable for some debts and not for others, is there any difficulty in segregating the liability of each stockholder, and devoting the avails of it to the benefit of the class of creditors who have the right to it. That is what the court would have to do in any event, and what it has to do every time it is called on to marshal assets. In fact, it is only by sequestrating the corporate assets and enforcing this liability of stockholders in the same proceeding that results exactly just and equitable to all parties can be worked out. We have no doubt that in the sequestration proceeding the liability of the stockholder may be enforced on the petition or complaint of the receiver, where

he shows that he represents creditors who are entitled to the benefit of it.    Ordinarily this would be the most appropriate mode of procedure.    But it is not important on whose petition, complaint, or whatever you please to call it, the enforcement of the liability is invoked, provided he is a party to the proceeding, and is himself, or as the representative of others, entitled to ask for it.    Some of the counsel seem to have been misled by the fact that the thresher company is called an "intervener."    It is not an intervener in the proper sense of the word, or in any sense except that it has come in as a party to the proceeding subsequent to its commencement.    There also seems to be a serious misapprehension as to the legal *status* of the thresher company in this litigation.    It is not doing anything to interfere with the sequestration or receivership, nor asking for anything for its own exclusive benefit.    Neither has it any more control over this prosecution than any other creditor who becomes a party to the proceeding. On the contrary, what it seeks is in furtherance of a complete adjustment, in and through that proceeding, of all rights and liabilities of the corporation, the stockholders, and the creditors.    Whatever is realized belongs to all the creditors of Seymour, Sabin & Co., or at least to all that class of creditors entitled to participate in it, and will be in the custody of the court, and distributed by it, or by the receiver as its officer, and under its direction.

Order affirmed.

GILFILLAN, C. J., took no part.

(Opinion published 50 N. W. Rep. 1114.)