NATIONAL NEW HAVEN BANK v. NORTHWESTERN GUARANTY LOAN COMPANY and Others.[1]

FIRST NATIONAL BANK OF MERRILL v. S. H. HARPER and Others.

June 20, 1895.

Nos. 8762, 9152—(60, 59).

**Corporation—Liability of Officers and Members under G. S. 1894, § 2600, Subd. 3—"Unfaithfulness."**

G. S 1894, § 2600, subd. 3, provides that any officer, director, or member of a corporation is liable for corporate debts when he "is guilty of any fraud, unfaithfulness or dishonesty in the discharge of any official duty." "Unfaithfulness," as here used, *held* to mean any violation or neglect of official duty.

**Same.**

*Held*, these provisions give the creditor a right of action against the official only when his unfaithfulness has resulted in damage peculiar to such creditor, but not when the only damage or loss is to the corporation, and by reason thereof to all the creditors in common.

**Same—Action to Enforce—Parties.**

*Held*, such creditor suffering loss or damages special or peculiar to himself may maintain an action at law against such unfaithful official, and is not compelled to resort to an action in equity brought by or on behalf of all the creditors.

**Same—Measure of Recovery.**

*Held*, the measure of his recovery is the amount of his debt, and not merely the amount of his loss.

**Same—Contributing Fraud of Inferior Officer.**

Under this statute a person who is induced to become a creditor of an insolvent corporation by reason of the negligence or other unfaithfulness of an officer thereof, and is injured thereby, may maintain an action against such officer for the amount of his debt. And when the creditor of such insolvent corporation is induced to become such by reason of the fraud of an inferior officer, and the negligence of a superior officer, and is injured thereby, he may maintain an action for the amount of his debt against such superior officer.

[1] Reported in 63 N. W. 1079.

**Liability of Stockholders under G. S. 1894, § 2600, Subd. 2.**

> G. S. 1894, § 2600, subd. 2, provides that the private property of stock-
> holders of a corporation organized under G. S. 1894, c. 34, shall be liable
> for corporate debts "for a failure by the corporation to comply substan-
> tially with the provisions aforesaid as to organization and publicity."
> *Held*, this has no reference to the violation of the provisions of G. S. 1894,
> §§ 2597, 2598, which provide for the posting up of the by-laws and certain
> statements, but it refers to a violation of the provisions of G. S. 1894, §§
> 2593, 2594, relative to filing and publishing the articles of incorporation.

Two actions in the district court for Hennepin county.

The defendants in the first-named action were Northwestern
Guaranty Loan Company, William S. Streeter, C. H. Pettit, Loren
Fletcher, W. D. Washburn, Thomas Lowry, George A. Pillsbury,
Charles Robinson, William H. Eustis, and Louis F. Menage. In the
other action the defendants were S. H. Harper, W. G. Crocker,
Frank J. Percival, and all the defendants in the former action.

In each of the actions certain defendants demurred to the com-
plaint, and from an order of the district court, Russell and Jami-
son, JJ., sustaining the demurrers, the plaintiff in each action ap-
pealed. Reversed.

These cases were argued at the October, 1894, general term. Of
its own motion the court ordered a reargument at the April, 1895,
general term, that it might be advised as to the construction of G. S.
1894, § 2600, subd. 3, and suggested that among the questions
which had occurred to it as bearing on the construction were the
following:

(1) Should it be construed in connection with G. S. 1894, § 5895,
subd. 2, as being in pari materia?

(2) Do the breaches of official duty specified in G. S. 1894, § 2600,
subd. 3, refer to breaches of duty towards the corporation or to
breaches of duty specially affecting the creditor; or otherwise
stated, does this subdivision make the offending officer liable to all
the creditors of the corporation or only to those who are specially
damaged by his breach of official duty?

(3) If the offending officer is liable for the corporate debts under
G. S. 1894, § 2600, subd. 3, is he also liable under G. S. 1894, § 5895,
subd. 2, for the loss caused to the corporation, or is the second

liability included in the first; or is he liable only for one, at the election of the creditors, and not for both?

(4) Does the word "unfaithfulness" in G. S. 1894, § 2600, subd. 3, include negligence, or does it refer only to acts of positive bad faith?

*John B. Atwater*, *M. H. Boutelle*, and *Ambrose Tighe*, for appellant National New Haven Bank.

The complaint shows a liability under G. S. 1894, § 2600, subds. 2, 3; Dodge v. Minnesota Roofing Co., 16 Minn. 327 (368); Johnson v. Fischer, 30 Minn. 173, 14 N. W. 799; Merchants' Nat. Bank v. Bailey Mnfg. Co., 34 Minn. 323, 25 N. W. 639; Patterson v. Stewart, 41 Minn. 84, 42 N. W. 926; Nolan v. Hazen, 44 Minn. 478, 47 N. W. 155; Minnesota Thresher Mnfg. Co. v. Langdon, 44 Minn. 37, 46 N. W. 310. Section 2600 is not declaratory of the common law, under which the liability of corporate officers for malfeasance was to respond for the loss or damage occasioned thereby. Morawetz, Priv. Corp. §§ 225, 250, 909; 1 Beach, Priv. Corp. § 256; Patterson v. Stewart, supra. Sections 2600 and 5895 do not recognize or impose similar liabilities. Robinson v. Smith, 3 Paige, 222. There is a specific remedy applicable to and corresponding with the liability imposed by section 2600. Merchants' Nat. Bank v. Bailey Mnfg. Co., supra; Dodge v. Minnesota Roofing Co., supra; Johnson v. Fischer, supra; Nolan v. Hazen, supra.

The present action pertains to the creditor alone; it is purely statutory; its object is not to create a fund; it is not fixed or limited; it lacks, therefore, the requisites of an action available to creditors by a bill of equity in behalf of all. It is of quasi penal nature, and is, therefore, enforceable at law in the ordinary manner. Boughton v. Otis, 21 N. Y. 261; Merchants' Bank v. Bliss, 35 N. Y. 412; Chapman v. Comstock, 58 Hun, 325, 11 N. Y. Supp. 920; Providence Steam Engine Co. v. Hubbard, 101 U. S. 188; Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554. See Wiles v. Suydam, 10 Hun, 578; Lane v. Morris, 8 Ga. 468.

By section 2600, subd. 2, failure on the part of the directors to post a copy of the corporation's by-laws, a statement of its indebtedness, and the amount of its capital stock subscribed and paid in is sufficient to establish the liability of those guilty of it for the

corporate debts. Cincinnati Cooperage Co. v. O'Keeffe, 120 N. Y. 603, 24 N. E. 993; Gadsen v. Woodward, 103 N. Y. 242, 8 N. E. 653; Allen v. Clark, 108 N. Y. 269, 15 N. E. 387; Merchants' Nat. Bank v. Northwestern Car Co., 48 Minn. 349, 51 N. W. 117.

*Harrison & Noyes*, for appellant First National Bank of Merrill.

G. S. 1894, § 2600, does not purport to create a liability in favor of the corporation. Such a liability already existed by common law. Horn S. M. Co. v. Ryan, 42 Minn. 196, 44 N. W. 56. The liability is in favor of creditors, and they may enforce it as they see fit. It is not an asset of the corporation, and hence does not pass to the receiver or assignee in insolvency. Cook, Stock & Stockh. §§ 212, 218; White v. McCormack, 17 Ohio St. 86; Umsted v. Buskirk, Id. 113; Liberty College Assn. v. Watkins, 70 Mo. 13; Dutcher v. Marine Nat. Bank, 12 Blatchf. 435, Fed. Cas. No. 4,203; Cuykendall v. Corning, 88 N. Y. 129; Wait, Insolvent Corp. § 233. The corporation, on insolvency, cannot assign such claim for the benefit of creditors. Cook, Stock & Stockh. § 218, p. 209, note 3; Bristol v. Sanford, 12 Blatchf. 341, Fed. Cas. No. 1,893; Lane v. Morris, 8 Ga. 468; Arenz v. Weir, 89 Ill. 25. Since the liability is from the stockholders to the creditors, it cannot be enforced by a receiver in insolvency. Cook, Stock & Stockh. § 218, p. 209, note 4; Billings v. Robinson, 94 N. Y. 415; Farnsworth v. Wood, 91 N. Y. 308; Jacobson v. Allen, 12 Fed. 454; Cutting v. Damerel, 88 N. Y. 410. The action can be maintained only by the creditors in their own right and for their own benefit. Cook, Stock & Stockh. §§ 215, 218, p. 209, note 5; Farnsworth v. Wood, supra; Mason v. New York S. Mnfg. Co., 27 Hun, 307; Billings v. Trask, 30 Hun, 314; Weeks v. Love, 50 N. Y. 568; Mathez v. Neidig, 72 N. Y. 100; Brinham v. Wellersburg Coal Co., 47 Pa. St. 43; Mansfield I. Works v. Willcox, 52 Pa. St. 377; Hoard v. Wilcox, 47 Pa. St. 51; McHose v. Wheeler, 45 Pa. St. 32; Youghiogheny S. Co. v. Evans, 72 Pa. St. 331; McCarthy v. Lavasche, 89 Ill. 270; Hull v. Burtis, 90 Ill. 213; Lane v. Harris, 16 Ga. 217; Branch v. Baker, 53 Ga. 502; Norris v. Johnson, 34 Md. 485; Norris v. Wrenschall, Id. 492; Grund v. Tucker, 5 Kan. 70; Dauchy v. Brown, 24 Vt. 197; Windham P. Inst. v. Sprague, 43 Vt. 502; Bassett v. St. Albans Hotel Co., 47 Vt. 314;

Paine v. Stewart, 33 Conn. 516; Grose v. Hilt, 36 Me. 22; Haskins v. Harding, 2 Dill. 99, Fed. Cas. No. 6,196.

The purpose of the Minnesota statute is to create the same remedy in favor of creditors which the corporation itself had. Gebhard v. Eastman, 7 Minn. 40 (56); Robertson v. Sibley, 10 Minn. 253 (323); Dodge v. Minnesota Roofing Co., 16 Minn. 327 (368); Merchants' Nat. Bank v. Bailey Mnfg. Co., 34 Minn. 323, 25 N. W. 639; Allen v. Walsh, 25 Minn. 543; Johnson v. Fischer, 30 Minn. 173, 14 N. W. 799; Nolan v. Hazen, 44 Minn. 478, 47 N. W. 155; Patterson v. Stewart, 41 Minn. 84, 42 N. W. 926; State v. Bank of New England, 55 Minn. 139, 56 N. W. 575; Flour C. N. Bank v. Wechselberg, 45 Fed. 547.

*Koon, Wheeler & Bennett, D. F. Morgan,* and *John M. Shaw,* for respondents Washburn, Lowry, Pettit, and Fletcher.

The liability sought to be enforced can be enforced only under G. S. 1894, c. 76. Section 2600, subd. 3, and section 5895, subds. 1, 2, must be construed in pari materia; and sections 5905–5910 provide a specific action and exclusive remedy.

At common law the liability is for damages sustained by the corporation. The right of action is in the corporation or its representative. In cases where a suit may be brought by a creditor or stockholder, it must be a suit in equity in the mature of a creditor's bill in behalf of all persons similarly situated. Hornor v. Henning, 93 U. S. 228; Stone v. Chisolm, 113 U. S. 302, 5 Sup. Ct. 497; Movius v. Lee, 30 Fed. 298; Craig v. Gregg, 83 Pa. St. 19; Houston v. Gregg, Id.; Crown v. Brainerd, 57 Vt. 625; Warner v. Hopkins, 111 Pa. St. 328, 2 Atl. 83; Coleman v. White, 14 Wis. 762; Hurlbut v. Marshall, 62 Wis. 590, 22 N. W. 852; Patterson v. Lynde, 112 Ill. 196, 10 Am. & Eng. Corp. Cas. 195; Franklin Ins. Co. v. Jenkins, 3 Wend. 130; Robinson v. Smith, 3 Paige, 222; Brinckerhoff v. Bostwick, 88 N. Y. 52; Merchants' Bank v. Stevenson, 7 Allen, 489; Eames v. Doris, 102 Ill. 350; Horner v. Carter, 3 McCrary, 595, 11 Fed. 362; 17 Am. & Eng. Enc. Law, 114; Cook, Stock & Stockh. § 135; 2 Pom. Eq. Jur. §§ 1094, 1095; Woolverton v. Taylor, 132 Ill. 197, 23 N. E. 1007; Harris v. Dorchester Parish, 23 Pick. 112; Crease v. Babcock, 10 Metc. (Mass.) 525; Allen v. Walsh, 25 Minn. 543; Johnson v. Fischer, 30 Minn. 173, 14 N. W. 799; Mer-

chants' Nat. Bank v. Bailey Mnfg. Co., 34 Minn. 323, 25 N. W. 639.

The respondents' contentions can be summarized as follows:

(1) The liabilities imposed by G. S. 1894, § 2600, and by section 5895, upon members, directors, and officers vest primarily in the corporation the right of action against such persons for what it has suffered in deprivation of its property and assets. (2) If the corporation refuses to sue, suit may be brought in equity by or on behalf of all stockholders whose stock has suffered depreciation. (3) Suits in equity may also be brought by or on behalf of creditors, where the deprivation of corporate assets has rendered their demands uncollectible by suit against the corporation. (4) In no case can a single creditor of an insolvent corporation suing alone maintain an action at law for the enforcement of such liability, unless the statute expressly gives such right of action to a specified class of creditors or for a specified class of debts on account of a specific dereliction of duty, as in Patterson v. Stewart, 41 Minn. 84, 42 N. W. 926. (5) The only other cases where a single creditor has been permitted to maintain an action at law to enforce individual statutory liabilities are where the corporation was still a solvent, active and going concern, as in Merchants' Nat. Bank v. Bailey Mnfg. Co., supra. (6) In all other cases of insolvent corporations G. S. 1894, c. 76, furnishes an adequate and exclusive remedy for the enforcement of all liabilities against members, managers, directors and officers.

*Gilfillan, Belden & Willard*, for respondent Pillsbury.

G. S. 1894, § 2600, declares an existing common law liability and authorizes a creditor to enforce it. Horn S. M. Co. v. Ryan, 42 Minn. 196, 44 N. W. 56. In the absence of statute it cannot be enforced by a creditor. Frost Mnfg. Co. v. Foster, 76 Iowa, 535, 41 N. W. 212; In re People's L. S. Ins. Co., 56 Minn. 180, 57 N. W. 468. The right of the creditor to enforce the liability does not always exist. In re People's L. S. Ins. Co., supra; Merchants' Nat. Bank v. Bailey Mnfg. Co., 34 Minn. 323, 25 N. W. 639. When the corporation is a going concern, the creditor can maintain an action under section 2600. But on the appointment of a receiver, the right to maintain the action passes to him. Minnesota Thresher Mnfg. Co. v. Langdon, 44 Minn. 37, 46 N. W. 310. By the appoint-

ment of a receiver the right of the creditor to proceed is suspended. Merchants' Nat. Bank v. Northwestern Car Co., 48 Minn. 361, 51 N. W. 119. The cases that hold that the "statutory liability" created by the constitution and resulting from the ownership of stock cannot be enforced by a receiver under the insolvent law, do not support the proposition that the present liability cannot be enforced by him. Hornor v. Henning, 93 U. S. 228.

By section 2601 the property of the stockholders cannot be levied on "while sufficient corporate property can be found to satisfy the execution or any part thereof." If plaintiff can obtain a judgment and collect it out of the property of the stockholders, a violation of section 2601 results; for property of the corporation can be found, and by means of a general execution against the corporation (which is all that bankruptcy means) is being applied to the payment of plaintiff's debt. Albitztigui v. Guadalupe Mining Co., 92 Tenn. 598, 22 S. W. 739.

Even if section 2600 creates a new liability to the creditor, it can only be enforced by a suit in equity for the benefit of all. Day v. Buckingham, 87 Wis. 215, 58 N. W. 254; Koons v. Martin, 66 Hun, 554, 21 N. Y. Supp. 657; Porter v. Sherman B. Co., 36 Neb. 271, 54 N. W. 424. The creditor's recovery is limited to a deficiency of assets. To determine this an accounting is necessary, and a suit in the nature of a bill in equity must be resorted to. Patterson v. Stewart, 41 Minn. 84, 91, 42 N. W. 926; Jackson v. Meek, 87 Tenn. 69, 9 S. W. 225; Ewing v. Stultz, 9 Ind. App. 1, 36 N. E. 170; Hornor v. Henning, supra. Such a course should be pursued to avoid multiplicity of suits,—Crease v. Babcock, 10 Metc. (Mass.) 525; McKusick v. Seymour, Sabin & Co., 48 Minn. 158, 170, 50 N. W. 1114; Thompson, Liab. Off. § 390,—and to prevent one creditor getting his debt to the exclusion of others. Crown v. Brainerd, 57 Vt. 625. The liability declared in section 2600 can be enforced under chapter 76. Patterson v. Stewart, supra.

CANTY, J. The appeal in each of these actions is from an order sustaining a demurrer to the complaint. The demurrer is on several grounds, but the only grounds now urged are that there is a defect of parties plaintiff and a defect of parties defendant.

The complaint in the National New Haven Bank case alleges that

the Northwestern Guaranty Loan Company is a corporation or-
ganized under G. S. 1894, c. 34, tit. 2, §§ 2794–2912; that the general
nature of its business, as stated in its articles of incorporation,
is "the discounting and selling of commercial paper, the buying and
selling of stocks, bonds, mortgages, and other securities, the issu-
ance and sale of bonds or other evidence of indebtedness, and the
guarantying of the payment of notes, mortgages, and other securi-
ties"; that on May 19, 1893, it was insolvent, and made an assign-
ment for the benefit of its creditors; that its indebtedness was then
$5,800,000, besides a mortgage of $600,000 on the building in Min-
neapolis known as the "Guaranty Loan Building," and once owned
by it. It is further alleged that over $2,340,000 of this indebted-
ness consists of so-called "debenture bonds," to secure which col-
laterals were deposited with trustees in amount somewhat in ex-
cess of the amount of the debenture bonds at the time they were
issued by the company; that three-fourths of these collaterals were
worthless notes and mortgages made by Louis F. Menage, the pres-
ident of the company, or by irresponsible persons procured by him
to make them, for his benefit; and that the company turned over
the proceeds of the bonds to Menage, for his own use and benefit.
It is further alleged that, besides the debenture bonds, over $3,-
000,000 of said indebtedness consists of the guaranties of the com-
pany on commercial paper disposed of by it; that over $2,500,000
of this paper was made by irresponsible parties; and that none of
the proceeds of the paper was ever paid to the makers thereof, but
all of such proceeds were paid to Menage, for his own use and
benefit. It is further alleged that these transactions were carried
on by the company for three years before the assignment, the
amount of indebtedness always increasing, and being carried along
by renewals and substitutions, and that Menage converted all of
the money so received by the company to his own use, and invested
the same in various speculations. It is further alleged that in
January and February, 1893, the company sold and delivered to
plaintiff a number of promissory notes, which are set out, and guar-
antied the payment of the same, and, for the purpose of inducing
plaintiff to purchase the same, falsely and fraudulently represented
to it, by written statements made and delivered to it, one with each
note, that the notes were made by responsible parties, by business

men in good standing, or by men of means known to the officers of the company; that the company was secured for its guaranty on the note by ample collateral security; that plaintiff believed such representations, and relied on them, and was induced by them to purchase the notes of the company; that all of such representations were made with intent to deceive it; and that all of the makers of said notes were worthless and irresponsible, and none of them could be found. It is further alleged that each and all of the defendants, except the company, are, and for more than three years before it made said assignment were, stockholders and members of the board of directors of said company, and had full notice and knowledge of the manner in which the business of the company was being carried on; that the company was insolvent during all of that time, and the directors knew, or by the exercise of reasonable care should have known, it, and that during all of that time they held the company out to the world as a solvent institution, and induced plaintiff and others to deal with it as such; that on June 30, 1892, and again on December 31, 1892, said directors did declare, and immediately after each of said times pay, a semiannual dividend of $50,000 upon the capital stock of said company to themselves and the other stockholders, amounting in all to $100,000. It is also alleged that Menage is insolvent and has absconded.

The complaint is prolix, and states much matter which is mere evidence, and it is not necessary to state more of its allegations, except that it charges all of said wrongful acts, and all of the fraud practiced on plaintiff, to have been due to the negligence and unfaithfulness of the defendant directors.

This action is brought on G. S. 1894, § 2600, which reads as follows:

"The private property of each stockholder in any corporation formed as herein provided is liable for corporate debts in the following cases: First. For all unpaid instalments on stock owned by him, or transferred for the purpose of defrauding creditors. Second. For a failure by the corporation to comply substantially with the provisions aforesaid as to organization and publicity. Third. When he personally violates any of the provisions of this title in the transaction of any business of the corporation as officer, di-

rector or member thereof, or is guilty of any fraud, unfaithfulness or dishonesty in the discharge of any official duty."

The defendants do not claim that the complaint does not state a cause of action under this section, but urge that there is a defect of parties; that the action should have been brought by or in behalf of all the creditors against the corporation and all of the directors and stockholders, under G. S. 1894, c. 76, §§ 5889–5911. G. S. 1894, c. 76, § 5895, reads as follows:

"The district court may compel the officers of any corporation: First. To account for their official conduct in the management and disposition of the funds and property committed to their charge. Second. May decree and compel payment by them, to the corporation which they represent, and to its creditors, of all sums of money, and of the value of all property, which they have acquired to themselves, or transferred to others, or have lost or wasted by any violation of their duties as such officers."

And G. S. 1894, c. 76, § 5905, provides that "whenever any creditor of a corporation seeks to charge the directors, trustees or other superintending officers of such corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose, in any district court which possesses jurisdiction to enforce such liability." Subsequent sections provide the course of procedure.

It is contended by defendants that G. S. 1894, c. 34, § 2600, subd. 3, and G. S. 1894, c. 76, § 5895, impose the same liabilities for the same acts or omissions on the part of the officers of corporations, and that the remedy must be the same,—that provided by chapter 76. We cannot agree with counsel that only the same violation of official duty is recognized in each section, or that the liabilities provided for in each are the same. Section 5895 provides for indemnifying the creditors for the loss caused to the corporation, and provides no liability in any case, except to repay the loss, or restore to the corporation or its creditors the property diverted, lost, or wasted. On the other hand, section 2600 does not provide for the recovery merely of the loss to the creditor, but for the recovery from the unfaithful officer of the full amount of the debt due from the corporation to the creditor. Whatever difficulty is encountered in determining the meaning of section 2600, it is clear, especially when sections 2601, 2602, are taken into consideration, that the measure

of recovery is the amount of the debt, and not of the loss. These sections provide as follows:

"Sec. 2601. The private property of no stockholder shall be levied on under the preceding section, unless such stockholder, as well as the corporation, is duly served with process in the action, and the issue involving his individual liability as aforesaid raised and determined; and in no case whatever shall such property be levied on while sufficient corporate property can be found to satisfy the execution or any part thereof.

"Sec. 2602. The officer holding an execution which may be levied on private property, as aforesaid, shall make demand of payment thereon of the president, secretary, or some officer of the corporation, acting, or who was one of the last acting officers thereof, and if he does not forthwith pay said execution, or point out corporate property that may be levied on, the officer shall indorse the fact of such demand, refusal or neglect upon said execution, and thereupon may levy the same upon the private property of the stockholder served and impleaded as aforesaid. Such levy may be made to satisfy any balance due upon the execution after levy upon corporate property, or part-payment out of corporate funds."

If, as contended by defendants, the liability contemplated by section 2600 is the loss to the creditor, and not the amount of his debt, why should he be required to bring suit against the corporation, also, for this loss, and exhaust his remedy by execution against its property, before he can levy on the property of the unfaithful officer? In most cases the creditor's loss caused by the officer's act of unfaithfulness will be only a part of the creditor's debt, and the creditor will not only be allowed, but required, to split his cause of action against the corporation, and harass it with costs and executions in separate suits,—one suit for the part of his debt equal to such loss, and another suit for the balance of his debt. It is clear the statute never contemplated any such procedure. The action, under sections 2600, 2601, 2602, is against the unfaithful officer, not for the loss, but for the corporate debt.

The third subdivision of section 2600 makes the officer liable for "corporate debts" when he "is guilty of any fraud, unfaithfulness or dishonesty in the discharge of any official duty." Does this section mean that for the slightest violation of duty the officer is lia-

v. 61 m.—25

ble for all the corporate debts, without regard to the question of what relation the act of unfaithfulness bears to the debt? The act of unfaithfulness may result in a loss to the corporation of only $5. The debts of the corporation may be $5,000,000. Does he, by such act, incur such liability? Neither is the liability confined to superior officers, or those having the general management and control of the business, but a mere subordinate officer, having charge of some special part of the business, might incur such liability. We cannot hold that the legislature had so little regard for the law of cause and effect as to intend such a consequence. It seems to us that these provisions of section 2600 were intended to apply only where the unfaithfulness of the official caused some loss peculiar to the individual creditor, not where the loss is a mere corporate loss, common to all the creditors; that, where the act of unfaithfulness causes any loss peculiar to the individual creditor, he may bring suit against the guilty official, not for that loss merely, but for his whole debt. But if the act of unfaithfulness causes a loss merely of corporate assets, which is a loss common to all the creditors, the officer is liable, not for all of the debts of all of the creditors, but for the loss; and the case comes within the provision of section 5895, whether the action is brought by the corporation or the creditors.

Every case adds new proof to what has so often been remarked,— that the statutes of this state regulating corporations are crude, inconsistent and in conflict with each other, and it is often difficult to spell out of them the real intent of the legislature. It seems to us that any other interpretation that may be given to the third subdivision of section 2600, than the one here given, will result in inextricable and hopeless conflict between that subdivision and the second subdivision of section 5895.

These two subdivisions were passed at the same time as a part of the Revision of 1866, are in pari materia, and must be construed together, as parts of the same statute. If it should be held that the unfaithful officer is liable under both subdivisions to all of the creditors, then he would by the same act incur a liability to the same parties under each subdivision. If in that case it were held that he is subject to both liabilities, then one or the other must be purely a penalty, and a recovery by one creditor of a part of

the penalty would be a bar to any further recovery by any other creditor. See Hornor v. Henning, 93 U. S. 228. If it were held that he is subject to one or the other liability, but not to both, then there would have to be an election by the creditor or creditors as to the liability for which he or they would proceed; but who would be entitled to make that election? One creditor might proceed under said third subdivision, on behalf of himself alone, and subsequently another creditor might proceed under said second subdivision, in behalf of himself and all the other creditors. Which would control? Again, if it were held that one liability is included in the other,—which would be a more reasonable interpretation than either of the last two,—still the question would arise, why did the legislature, by one subdivision, give all the creditors a half a loaf each (his share of the loss to the corporation), and at the same time, by the other subdivision, give all the creditors a whole loaf each (his whole debt)? And why did the legislature require all the creditors to join in order to recover the half loaf apiece, while at the same time it permitted each creditor to proceed alone to recover his whole loaf? Besides, would not the institution of proceedings by one creditor, on behalf of all, to recover the loss, under the subdivision in chapter 76, impound a part of each creditor's cause of action, so that no creditor could proceed alone to recover his whole debt, under the subdivision in chapter 34, and did the legislature ever contemplate any such result? Many unanswerable questions would arise if it were held that under both of these subdivisions the offending officer, by the same act, became liable to all the creditors. The court must, as far as possible, reconcile the conflict between these two subdivisions, and spell out of them, as best it can, the intention of the legislature.

It is contended by counsel for respondents that the words "any unfaithfulness," in said third subdivision, do not include negligence or negligent omissions; that they are used in connection with the words "fraud" and "dishonesty"; and that, by applying the doctrine noscitur a sociis, the words "any unfaithfulness" must be held to refer only to acts of fraud, or positive bad faith.

Said section 2600 first appeared in its present form in the Revision of 1866, and contained a fourth subdivision, not here important, which has since been repealed. Undoubtedly, the first subdivision of this

section is a substitute for section (321), c. 17, Comp. St. 1858, and the second subdivision of said section 2600 is a substitute for section (315) of said chapter 17. It is claimed by counsel that said third subdivision is a substitute for section (312) of said chapter 17, that this section applied only to acts of intentional fraud, and that this is a reason why said third subdivision should be construed as applying only to acts of a like nature. After examining said chapter 17, and carefully comparing it with the present law, as found in chapter 34, it seems to us that said third subdivision is rather a substitute for said section (312) and section (313), immediately following it, and that, in order to understand these two sections, it is necessary also to consider section (314). These three sections read as follows:

"(312.) Intentional fraud in failing to comply substantially with the articles of incorporation, or in deceiving the public or individuals in relation to their means or liabilities, shall subject those guilty thereof to fine or imprisonment, or both, at the discretion of the court. Any person who has sustained injury from such fraud may also recover damages therefor against those guilty of participating in such fraud.

"(313.) The diversion of the funds of the corporation to other objects than those mentioned in their articles and the notices published as aforesaid (provided, any person be thereby injured), and the payment of dividends which leave insufficient funds to meet the liabilities of the corporation, shall be deemed such frauds as will subject those therein concerned to the penalties of the preceding section; and such dividends, or their equivalent in the hands of individual stockholders, shall be subject to such liabilities.

"(314.) Dividends by insurance companies, made in good faith, before their knowledge of the happening of actual losses, are not intended to be punished by the provisions of the preceding section."

While section (312) refers to intentional fraud, in failing to do certain things, or in deceiving the public or individuals, section (313) provides that the diversion of funds to the injury of any one, or payment of dividends without leaving sufficient to pay creditors, shall be deemed to be such fraud as will subject the officers to the penalties of the preceding section. It cannot be held that section (313) was intended to apply only to cases where the funds were

diverted or the dividends paid knowing that it would cause such injury, or that there was not sufficient left to pay creditors. That such was not the intention of the legislature clearly appears from section (314), which provides that said section (313) shall not apply to dividends paid by insurance companies in good faith before knowledge of the happening of losses. This is a case where the expression of one thing is the exclusion of another. Section (314) clearly implies that said section (313) shall apply even when the officers acted in good faith, and had no knowledge that such diversion would cause any such injury, or such payment would not leave sufficient to pay creditors. As the penalty for a violation of the provisions of section (313) was fine and imprisonment and the payment of damages, it may be that the courts would not have enforced this section up to its strict letter. But it certainly was enforceable in all cases where the officer, even though acting in good faith, was guilty of negligence, in failing to have such knowledge.

We are cited by counsel to the proposed Revision printed by the commissioners, and adopted as the Revision of 1866, and to the pamphlet report of the commissioners accompanying the same. It is true that the marginal reference opposite said section 9 in said proposed Revision refers only to said sections (312), (315), and (321), and not to section (313), but an examination of the marginal references in said proposed Revision will show that they are somewhat crude and indefinite. In said pamphlet report the commissioners say, as to said chapter 34 of the Revision: "This chapter is entirely remodeled, and divided into titles expressive of the different classes of corporations, yet comparatively few changes have been made, the various provisions already existing serving as a basis for the whole chapter. In sections 9, 10, and 11 will be found provisions in relation to the liability of a stockholder's private property for the payment of corporate debts, and the mode of reaching the same. They are all based upon existing laws, excepting the fourth subdivision of section 9, which rests upon section 3, art. 10, of our constitution. It is believed that the chapter contains provisions sufficiently ample and liberal to invite capitalists and business men to become incorporated under it, while proper safeguards are provided against any abuse of chartered privileges, and for the due protection of the public."

When the meaning of a statute is doubtful or obscure, it is proper, in construing it, to examine the language of the statute prior to the amendment, and the various changes intended to be made. After such an examination of the statute from which said third subdivision was derived, we are forced to the conclusion that the words "any unfaithfulness," as used in said third subdivision, were intended to include negligence as well as positive bad faith. This subdivision was intended to cover a great deal of ground with a few words, and to apply the doctrine of noscitur a sociis to the words "any unfaithfulness" would not, in our opinion, be according to the legislative intent. As before stated, in the doing of certain acts the old statute made the officer liable for negligence as well as for fraud; in fact, it went further, and attempted to make him liable to both fine and imprisonment for the injury caused by those acts, even though done in good faith, and without either negligence or fraud. By the changes made in the Revision, it was not intended to exempt the officer from liability for any negligence or fraud for which he would have been liable under the Compiled Statutes. On the contrary, by the more general language there used, it was the intention to make the liability more general, but the penalty somewhat less arbitrary and drastic. It abolished the penalty of fine and imprisonment, and also the penalty for acts done in good faith, without negligence or fraud, but it changed the civil liability to the person injured from damages for the injury to a liability for his whole debt. The word "unfaithfulness" was not in the old statute, and must have been introduced into the new one for some purpose. Webster defines "unfaithfulness" as "neglect or violation of promises, vows, allegiance, or other duty"; and, in our opinion, it should, as used in this statute, be given its ordinary meaning.

The complaint in this action alleges diversion and wasting of corporate assets, which is a cause of action in favor of the corporation, and an injury common to all the creditors; and whether it has been impounded by the assignment for the benefit of creditors, so that it cannot be reached by an action by and on behalf of all of the creditors, under chapter 76, it is not necessary to consider. See Olson v. Cook, 57 Minn. 552, 59 N. W. 635. It certainly is so impounded as against such an action as this, even if it were conceded that such an action as this, brought by and on behalf of only one

creditor, would lie at all to recover for such loss of assets. But there are other allegations in the complaint which allege loss and damage special or peculiar to the plaintiff as an individual creditor, and caused by the unfaithfulness of the defendant officials. It is alleged that, by the negligence and unfaithfulness of these officials, plaintiff was induced to become a creditor of said company.

There are two grounds stated, either of which would support an action for such negligent unfaithfulness:

First. It is to be gathered from the complaint that by the negligence and unfaithfulness of the defendant directors the company was, for three years after it became insolvent, held out to the world as solvent and fit to be trusted; that, by reason of such negligence and unfaithfulness, plaintiff was, at the end of said three years, induced to, and did, trust it, and in consequence thereof lost the money he paid it; that if said directors had exercised ordinary care, and properly performed their duties, they would, long before plaintiff was so induced to trust it, have discovered its insolvency, and caused it to suspend business.

Second. It is to be gathered from the complaint that these directors negligently permitted the other officials of the company to practice a system of fraud on persons dealing with the company, which fraud consisted in guarantying the notes of irresponsible persons, and selling them to innocent parties, by means of false representations; that the same kind of fraud was practiced on plaintiff; that the defendant directors either had knowledge of these things, or were negligent in failing to have such knowledge; that if said directors had exercised ordinary care, and properly performed their duties, they would, long before plaintiff was so defrauded, have discovered these fraudulent practices, and put a stop to them. Such acts of negligence may not have resulted in any loss to the corporation at all, while it resulted in much loss to individual creditors. The fact that Menage received all of the proceeds of these fraudulent transactions, and converted such proceeds to his own use, may not be material here, except as a circumstance which should have put the other directors on their guard, or which tended to furnish them notice of the fraudulent acts, which should have put them on inquiry.

It has sometimes been intimated that, on common-law principles, a superior servant or officer cannot be held liable to a third party

for his negligent nonfeasance, in failing properly to superintend the acts of an inferior officer or servant, by reason of which the third party is injured. See Thompson, Liab. Off. p. 355, § 5; 2 Thompson, Neg. 1057, 1060. Whether this is in all cases good law or not, it is not necessary here to consider. We are of the opinion that under section 2600, a superior officer of a corporation is liable to its creditors for loss caused by the failure of such superior officer to properly superintend the acts of its inferior officer or officers under his control, and that such superior officer is liable, not only for the loss caused by such failure, but for the whole debt of the creditor thereby specially injured.

For the reasons stated, we are of the opinion that the plaintiff is entitled to maintain this action to recover the amount of his debt, and that it was error to sustain the demurrer to the complaint.

The court below held that plaintiff should have brought an action, not under chapter 76, but an action in equity, on behalf of himself and all other creditors, not for the debt, but the loss to the creditors caused by the unfaithfulness alleged. Most of the cases cited by the court below, and by counsel for the defendants here, to sustain this position, are cases where the fund provided by statute for the payment of creditors was limited in amount. Many of them are cases of stockholders' liability. Such limited fund belongs to all of the creditors. Each and all of them are tenants in common in the fund, to the extent necessary to satisfy the debts; and the undivided part of the fund belonging to any one creditor can only be ascertained by determining all of the sums due all of the creditors. In such a case an action at law is not a proper remedy, or any action by a part of the creditors or against a part of the stockholders, but a bill in equity should be brought by or on behalf of all the creditors against all of the stockholders. Though not thus stated, this rule is applied in Allen v. Walsh, 25 Minn. 543; Johnson v. Fischer, 30 Minn. 173, 14 N. W. 799; McKusick v. Seymour, Sabin & Co., 48 Minn. 158, 50 N. W. 1114. See, also, Thompson, Liab. Stockh. § 361.

Much stress is laid on the case of Hornor v. Henning, 93 U. S. 228, by both the defendants and the court below. In that case the statute provided that, if the indebtedness of the corporation "shall at any time exceed the amount of its capital stock, the trustees of such company assenting thereto shall be personally and indi-

vidually liable for such excess to the creditors of the company." It was held that a single creditor among many could not maintain an action at law, but the fund could only be reached by a bill in equity for the benefit of all the creditors. The same rule applies to that case. The "excess" spoken of in the statute is such a limited fund.

In many of the cases cited the statute provided that the creditor might maintain an action against the unfaithful officer for the loss or diversion of corporate assets. In such a case the fund is limited. It is the amount of the loss, and belongs to all the creditors, as tenants in common, and the part or amount which belongs to any one creditor can only be ascertained by determining the amounts due all the creditors, in an action in which they are all parties, or by which they are all concluded.

But where the fund from which the creditors are to be paid is unlimited, or limited only by the solvency of the persons liable, the rule is different. There the creditors are not tenants in common in the fund, and the amount which one creditor can claim out of the fund does not depend on the amount of the other claims. The claim of one creditor will not exhaust the fund. It may exhaust the solvency of the officer liable. But so may other claims against him which have no connection with the affairs of the corporation. If he is insolvent the remedy is not, as claimed by some of the cases, by a bill in equity by and on behalf of all the corporation creditors, but by proper insolvency proceedings as to him individually. In this class of cases there is no reason why an action at law should not be maintained by a single creditor against the guilty official. The case of Patterson v. Stewart, 41 Minn. 84, 42 N. W. 926, falls within this class.

There is a class of cases cited by both parties, such as Merchants' Nat. Bank v. Bailey Mnfg. Co., 34 Minn. 323, 25 N. W. 639, and Nolan v. Hazen, 44 Minn. 478, 47 N. W. 155, founded on the first subdivision of section 2600, and brought by one creditor against one or more of the individual stockholders to recover for unpaid stock subscriptions due the corporation. These cases are not in point on the question here involved. It is true that the fund provided for the payment of creditors in such case is a limited fund, but it is not a fund set apart for or sacred to the use of the cred-

itors, and which they alone can reach. The fund is an ordinary asset, which might have been disposed of as any other corporate asset, and the creditors' suit to recover it is a mere garnishment proceeding.

It is urged by defendants' counsel that the recovery sought in this action is the recovery of a penalty; that there can be but one recovery for such penalty; that, if this plaintiff is allowed to recover, it will be a bar to recovery by other creditors; and that for this reason the action should be by or in behalf of all the creditors,—and cases are cited which so hold.

We cannot so hold. We are of the opinion that recovery on such liability is not the recovery of a penalty, in any strict or proper meaning of that term. The statute confers certain privileges on persons associating themselves together for the purpose of business by forming a corporation. Among those privileges is immunity from liability for the debts of the association, except to a limited extent. But the same statute revokes this immunity as to officers guilty of certain wrongs, and leaves them liable for such debts. There are many instances of liability incurred by a joint tort feasor, a partner, and a principal, on account of his agent, which are more in the nature of a penalty than the liability in such a case as this, yet none of these liabilities are ever classed as penalties.

The complaint in the National Bank of Merrill case is similar to that in the New Haven Bank case, except that it is not so prolix, and is confined more to alleging injury and damage peculiar to the plaintiff, and does not set out so much of those matters which constitute loss and damage to the corporation and to all the creditors in common. The two cases were argued together, and the questions heretofore discussed are involved in each case. But in the complaint in the National New Haven Bank case it is further alleged that there never was posted, or kept posted, in the principal place of business of said company, any copy of its by-laws, or any statement of the amount of the capital stock subscribed or actually paid in, or the amount of the indebtedness of the corporation.

It is urged by counsel for appellant that, on account of the failure so to post said by-laws and statements, as provided by G. S.

1894, §§ 2597, 2598, the directors are liable under the second sub-division of said section 2600, which provides that the private property of stockholders is liable:

"Second. For a failure by the corporation to comply substantially with the provisions aforesaid as to organization and publicity."

We cannot agree with counsel. This subdivision was originally said section (315), which clearly referred to the organization by filing articles of incorporation as provided in sections (301) and (302), and the publication of a notice of the same as provided in sections (303), (304), c. 17, Comp. St. 1849–58. Section (313) also refers to the publishing of this notice. The organization and publicity mentioned in said second subdivision refer to the organization and publicity provided for by G. S. 1894, §§ 2594, 2595, and not to the post-ing of the by-laws and statements provided for in sections 2597 and 2598.

This disposes of all the questions before us, and the order appealed from in each case is reversed.