WILLIAM H. PATTERSON *vs.* J. H. STEWART, impleaded with Minnesota Manufacturing Company.

June 18, 1889.

Corporations under Manufacturing Act—Directors' Liability to Creditors, how Enforced.—"If any corporation organized and established under the authority of this act shall violate any of its provisions, and shall thereby become insolvent, the directors ordering or assenting to such violation shall be jointly and severally liable in an action founded on this statute for all debts contracted after such violation as aforesaid." Laws 1873, *c.* 11, § 23, (Gen. St. 1878, *c.* 34, § 142.) *Held*, that a creditor of the corporation may sue one or more of the directors to enforce the liability without joining all the creditors to whom they are liable, or all the directors subject to the liability.

**Same—Company in Hands of Receiver.**—The fact that the affairs of the corporation have been placed in the hands of a receiver neither takes away nor suspends this right of action.

**Same—Judgment against Company Unnecessary.**—It is not necessary that the creditor before suing the directors shall have obtained judgment against the corporation. He may, if necessary, join it as codefendant with the directors, and establish his claim against the corporation in the same action.

**Same—For what Acts Directors are Liable.**—If a series of acts or a continuous course of conduct, on part of the directors, in violation of the statute, finally producing the insolvency of the corporation, is begun before the debt of a creditor is contracted, the debt is one contracted "after such violation," although the series of acts or course of conduct is not completed, or the insolvency of the corporation consummated, until afterwards.

**Same—Issuing Accommodation Paper.**—The *ultra vires* acts of the directors in executing accommodation paper in the name of the corporation, or in lending its funds to others, constitute a violation of the act "by the corporation" within the meaning of the statute.

**Same—What Constitutes "Assent" of a Director to Unlawful Acts.**— To constitute "assent" there must be something more than mere negligence on part of a director in not knowing what, in the exercise of proper care, he ought to have known. There must be some wilful or intentional violation of duty—assenting to it, knowing that the act is being, or about to be, done. But if, with such knowledge, he neither objects to nor opposes it when his duty requires, and when he has the opportunity of doing so, this is "assent."

Action brought in the district court for Ramsey county against the defendant corporation and J. H. Stewart, one of its directors. Defendant Stewart demurred to the complaint on all the statutory grounds except want of jurisdiction. The demurrer was sustained by *Kerr*, J., and the plaintiff appealed.

The case made by the complaint is in substance as follows: The defendant corporation was organized in December, 1875, under the "Act relating to manufacturing corporations," approved March 7, 1873. (Laws 1873, c. 11; Gen. St. 1878, c. 34, §§ 120–143.) On April 1, 1883, plaintiff lent the company $250 on its promissory note, payable six months from date, with interest at six per cent. per

annum, which is still wholly unpaid.   From December 22, 1875,
until January 15, 1888, the defendant company was engaged in the
business of making and selling agricultural implements, and from
the first to the last of those dates, the company, through its officers
duly authorized to make and negotiate its commercial paper and to
transact all its business, executed and delivered a large amount of
negotiable paper, and indorsed a large amount of like paper, with-
out any consideration moving to it, and solely for the accommodation
of other persons.   During the same period the company loaned large
sums of money to other persons and corporations, although such
money was needed and could have been profitably employed in its
own business, for the loan of most of which sums it received no re-
turn whatever, either in principal or interest.   By reason of its
making and indorsing such accommodation paper and loans, the
company became unable to meet its obligations as they matured, and
on January 15, 1888, was by a court of competent jurisdiction duly
placed, with all its property and business, in the hands of a receiver.
During all the period from December 22, 1875, to January 15, 1888,
defendant Stewart was a director of the company, "and did not at
any time object to the transactions above set out, but on the con-
trary said defendant had full knowledge of the by-laws and resolu-
tions of said corporation, whereby the officers thereof were given au-
thority to execute such paper and indorsements and make such loans
as aforesaid, and acquiesced in the same."

The complaint does not state the amount of the accommodation
paper made or indorsed, or of the loans made, by the company, nor
the names of any of the persons and corporations for whose benefit
the paper was made or indorsed, or to whom the loans were made.
It does not state in what court or at whose suit the receiver was
appointed, or who the receiver was, nor does it state the terms of the
"by-laws or resolutions" authorizing the transactions complained of,
or make any mention of them except in the passage quoted.

For a second cause of action the following statements are made :
The defendant company is indebted to plaintiff in the sum of $250
and interest at six per cent. from April 1, 1883, as before stated.
Prior to 1882 the president and secretary always made the certificate

required by section 12 of the act of 1873, (Gen. St. 1878, *c.* 34, § 131,) and filed it with the register of deeds of Ramsey county, (the county wherein the company transacted its business,) prior to February 15th in each year; but no such certificate nor any certificate relative to the company's affairs was made in the year 1882 or in 1883, or filed in the register's office of Ramsey county either before February 15th or at all. "During all said years 1882 and 1883 said J. H. Stewart was a member of the board of directors of said corporation, and did not at any time object or remonstrate with said president and secretary, or with any other of the members of the board of directors of said corporation, or of the officers thereof, in regard to said failure to file said certificate as aforesaid."

.Judgment is demanded against each defendant in the sum of $250, with interest at six per cent. per annum from April 1, 1883, and for costs.

*Rogers, Hadley & Selmes,* for appellant.

*Flandrau, Squires & Cutcheon,* for respondent.

MITCHELL, J. If any proof were needed of the chaotic condition of our statutes relating to corporations it could be found in the confused and diverse provisions, scattered through chapters 34 and 76, relating to the enforcement of the personal liabilities of stockholders and officers for corporate debts. In *Dodge* v. *Minn. Plastic Slate Roofing Co.,* 16 Minn. 327, (368,) it was assumed, and in *Merchants' Nat. Bank* v. *Bailey Mfg. Co.,* 34 Minn. 323, (25 N. W. Rep. 639,) it was expressly held, that a creditor of a corporation organized under title 2 of chapter 34 might sue the corporation for the debt, and join as defendants one or more of the stockholders to enforce their liability, and that in such action it was not necessary to join all the creditors or all the stockholders subject to liability. This was put upon the ground that sections 10 and 11 of that chapter clearly contemplated such an action, different from that provided for in chapter 76. In *Allen* v. *Walsh,* 25 Minn. 543, which was an action by a creditor of an insolvent bank against a stockholder to enforce his individual liability under the banking law, it was held that the exclusive remedy was under chapter 76. This was put mainly upon considerations growing out of the character and purpose of the liability,

and the inadequacy of any other form of remedy to accomplish the object of the statute. In *Johnson* v. *Fischer*, 30 Minn. 173, (14 N. W. Rep. 799,) which was an action by a creditor of a manufacturing company organized under the act of 1873, to enforce what was assumed to be the personal liability of a stockholder under Laws 1878, *c.* 56, (Gen. St. 1878, *c.* 34, § 111,) it was held, following *Allen* v. *Walsh*, and for similar considerations, that an action under chapter 76 furnished the exclusive remedy. The present case raises the question of the proper procedure to enforce the personal liability of directors of a manufacturing corporation organized under Laws 1873, *c.* 11, imposed by section 23 of that act, (Gen. St. 1878, *c.* 34, § 142,) for ordering or assenting to violations of the act by which the corporation became insolvent. It will be observed that none of our decisions referred to cover the case.

Gen. St. 1878, *c.* 34, § 138, (repealed in 1883,) provides that if the president or secretary of the corporation intentionally neglects or refuses to comply with the twelfth section of the act, (making and filing an annual certificate,) the persons so neglecting and refusing *"shall jointly and severally be liable to an action founded on this statute* for all debts of such corporation contracted during the period of any such neglect or refusal." Section 139 provides that if the capital stock shall be withdrawn and refunded to the stockholders before the payment of all the debts of the corporation for which such stock would have been liable, the stockholders shall be liable *to any creditor in an action founded on this statute* to the amount of the sum refunded to them, respectively; but if any stockholder shall be compelled by such action to pay the debts of any creditor, he shall have the right to call upon all the stockholders to whom any part of the stock has been refunded to contribute their proportionate share. Section 140 provides that if the directors pay a dividend when the corporation is insolvent, or any dividend the payment of which would render it insolvent, knowing the fact, the directors assenting thereto shall be *jointly and severally liable in an action founded on this statute* for all debts due from such corporation at the time of such dividend. Section 141 provides that if certain officers intentionally neglect or refuse to comply with the provisions of the act, and to

perform the duties therein required of them, such as so neglect or refuse shall be *jointly and severally liable in an action founded on this statute* for all debts of the corporation contracted during the period of such neglect or refusal. Section 142 (which is the one under which this action is brought) provides that if any corporation organized under the authority of the act "shall violate any of its provisions, and shall thereby become insolvent, the directors ordering or assenting to such violation shall be *jointly and severally liable in an action founded on this statute* for all debts contracted after such violation."

We have referred to these various sections, not only because, as we think, the particular language used is itself strongly indicative of the kind of action intended by the legislature, but because the nature, extent, and purpose of the liabilities imposed illustrate what form of remedy would be adequate and appropriate under the circumstances. In every instance the language used is "in an action founded on this statute," not some other. We cannot agree with counsel for the defendant that this merely creates a right and a liability, but prescribes no remedy. It is true, it does not specify the particular form of the action, but unless it is indicative of the remedy it has no meaning whatever. Indeed, in a jurisdiction where law and equity are administered separately, it has been held that such language in a statute gave a party an adequate remedy in law, and hence that a bill in equity would not lie. *Bassett v. St. Albans Hotel Co.*, 47 Vt. 313. Again, it will be observed that in every instance the liability created is directly to the creditors, and not to the corporation. The corporation could not maintain an action to enforce any such liability; neither could its assignee or receiver, in the absence of some express statutory authority. And right here we think counsel for defendant has fallen into a radical error. He argues that, except in extent, the liability is that which at common law would rest upon directors under similar circumstances; that at common law, for such acts of negligence or misconduct, the directors would be liable primarily to the corporation, and secondarily to the creditors; that the statute does not alter the relative rights of these parties; and hence that creditors, in attempting to enforce the liability, must do so in the right of

the corporation or its receiver, and if the corporation is placed in the hands of a receiver the right passes primarily to him. The conclusion sought to be drawn from this line of argument is that an action under chapter 76, by the receiver, is the only remedy. The relation between a corporation and its officers is that of principal and agent, and for negligence or fraud in the performance of their official duties, resulting in damage to the corporation, they would be doubtless liable to the latter at common law. But the extent of the liability would be the amount of resultant loss. Again, the directors of a corporation are not in any contractual relation with its creditors. They are strangers to each other. The creditors have no cause of complaint on account of any unlawful act of corporate officers, provided sufficient assets remain to pay their claims. Of course, as in case of any other persons, strangers to each other, directors would be liable at common law or equity to make just compensation for any wrong done to the legal rights of creditors. For example, if they misappropriate any part of the capital stock, (which, in America, is held to be a trust fund for creditors,) they might be held liable as trustees to the extent necessary to pay the debts; and, as in the case of liability to the corporation, the limit of the liability would be the amount of resultant damage. But the liability imposed under this statute has no relation whatever to the amount of actual damage to either the creditors or the corporation. For doing or failing to do certain things the directors or officers are made absolutely liable for certain classes of debts, although such acts or omissions may not in fact have resulted in a dollar's loss to either the corporation or its creditors. In this respect it is highly penal, so much so that it would not, under the law of comity, be enforced in another jurisdiction. The object is twofold—*First*, to enforce diligence and fidelity on the part of corporate officers; and, *second*, to furnish a prompt and efficient remedy to those creditors who were, or might have been, injuriously affected by the acts of misfeasance or nonfeasance.

The question as to the proper remedy to enforce the personal liability of stockholders or directors or officers for corporate debts depends so much upon the terms of particular statutes, or the remedial systems of different states, that not much aid can be obtained from

the decisions of other courts. But we think it will be found gener-
ally true that, unless a particular remedy is prescribed by statute,
the form of the remedy, whether by action at law by each creditor
against one or more stockholders or officers, or by bill in equity in
which all persons in interest or to be affected are made parties, is
made to depend upon the character of the liability. If its object is
to create a common fund, limited in amount, for the benefit of all
creditors, or all of a particular class, so that if one were allowed to
proceed alone he might exhaust the fund or get more than his share;
or if the liability was only for the deficiency of corporate assets, or
only for the excess of debts contracted over the amount permitted by
the charter, so that an accounting is necessary; or if for any similar
reason an action at law would be inadequate to furnish a complete
remedy or protect the rights of all persons interested,—the courts
have generally held, in the absence of any express statutory provis-
ion, that a suit in the nature of a bill in equity, bringing in all in-
terested parties, must be resorted to. *Hornor* v. *Henning*, 93 U. S.
228, is an example of this kind, and these considerations were given
much weight in *Allen* v. *Walsh* and *Johnson* v. *Fischer, supra*, in deter-
mining that the exclusive remedy was under chapter 76. But no
such reason obtains here. The liability of each director is unlim-
ited except by the amount of the corporate debts which fall within
the terms of the statute. What one creditor may collect will not
reduce the amount which another may recover. No accounting is
necessary in order to ascertain the amount of the deficiency of cor-
porate assets, for the creditor is not bound to resort to them first,
nor is his recovery limited to the extent of such deficiency. In fact,
a direct action by any creditor against any director not only fur-
nishes an adequate remedy, but it interferes with the rights of no
one else. The only possible exception to this might be an action
under section 139 against stockholders. In short, reason but adds
force to what seems the plain meaning of the language of the stat-
ute, viz., that the right of action is directly to the creditors, to whom
severally the directors are jointly and severally liable.

The fact (which appears from the complaint) that the affairs of
the corporation have been placed in the hands of a receiver neither

takes away nor suspends the creditor's right of action against the directors. The affairs of the directors are not in the hands of a receiver, nor will a suit against them at all interfere with the proceedings to wind up the affairs of the corporation. If it be necessary, as counsel argue, for a creditor to establish his claim against the company, and that it cannot be sued without leave of the receiver or the court, it would not alter the case, except that if such consent could not be obtained it might embarrass the creditor in enforcing his remedy. In what has been said we do not wish to be understood as holding that these statutory liabilities might not also be enforced by proceedings under chapter 76. It would seem that its provisions are broad enough to cover such a case. All that we hold is that a creditor is not bound to resort to it, because the statute gives him a right of action directly against the directors, and in his own behalf alone. Neither is it necessary that, before suing the directors, the creditor should have first established his claim against the corporation by judgment. There is no occasion for this, inasmuch as he is not required, first, to resort to the corporate assets. Assuming it to be true that he must establish his claim against the corporation, he may, as was done in this case, make it a codefendant with the directors, and establish the claim in the same action.

The acts charged in this case as constituting the violation of the act, resulting in the insolvency of the corporation, are, that during all the period from December, 1875, down to January 15, 1888, the directors executed in the name of the corporation large amounts of accommodation paper, for which no consideration was received, and loaned corporate money to other persons, for which no return was ever received, thereby diverting funds to purposes not authorized by law. The allegation is that by reason of this course of conduct in executing the accommodation paper and making unauthorized loans, the corporation became insolvent, so that on January 15, 1888, its affairs were by the court placed in the hands of a receiver. Plaintiff's debt was contracted in April, 1883, and defendant claims that inasmuch as the acts which caused the insolvency were not then completed, therefore it does not fall within the terms of the statute,—a debt "contracted after such violation." Such a construction would

render the section of very little force. It rarely occurs that a single act alone renders a corporation insolvent. This is usually the result of a series of acts or a continuous course of conduct. In this case it was the diversion of corporate capital, begun in 1875 and continued down to 1888, which, as alleged, produced the insolvency. If, in a series of acts or a continued course of conduct, those committed prior to the date of plaintiff's debt contributed, in connection with those committed afterwards, in producing the insolvency, then the debt was one contracted "after such violation," within the meaning of the statute.

It is also urged that these acts were merely the unauthorized acts of the directors, and not of the *corporation*, within the language of the statute, which is: "If any corporation, etc., shall violate." This would render the section wholly nugatory. A corporation can act only through its directors and officers, and it is against just such *ultra vires* or unlawful acts on their part that the statute is aimed. The language of the complaint is in substance that defendant was during all this time a director of the corporation, and did not object to these transactions, but, on the contrary, had full knowledge of the by-laws or resolutions authorizing the officers of the corporation to execute this accommodation paper and make such loans, and that he acquiesced in the same. It is claimed that this does not amount to an "assent" within the meaning of the statute. While there may be some doubt whether the word "same" refers to the execution of the paper and making the loans, or to the by-laws or resolutions, yet we think, fairly construed, this language at least means that he knew of the adoption of the by-laws or resolutions authorizing and directing the doing of the illegal acts, that he occupied a position where it was his duty to object to them, and yet he interposed no opposition or objection. Plaintiff's contention is that it is the duty of a director to know what is being done in corporate matters; that it is negligence for him not to know,—and therefore he is conclusively presumed to have known,—and, not objecting, he must be deemed assenting. Such a construction would impose this severe statutory liability for at least every act of mere negligence for which he would be liable at common law; but, as the act is highly penal,

·we do not think it ought to receive so broad a construction.   The
language of the various sections all tends to indicate that the legis-
lature intended that something more than mere negligence should be
necessary to subject a person to. those heavy penalties,—something
amounting to wilful, or at least intentional, violation of legal duty,
.either ordering the act done, participating in doing it, or assenting
to its being done with knowledge that it was being, or about to be,
.done.   This assent, however, need not be express.   If a director knew
that a violation of law was being, or about to be, committed, and made
no objection when duty required him to object, and when he had the
opportunity of doing so, this would amount to "assent."   We think
the allegations of the complaint amount to this.

Order reversed.