DE WITT GROCERY COMPANY ET AL. *v.* OSCAR T. WARE ET AL.

May Term, 1915.

Present:  MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 11, 1915.

*Corporations—Debts—Liability of Directors under P. S. 4307.*

The liability imposed by P. S. 4307, making the directors of a corpora-
tion personally liable for all its debts contracted with their assent
in excess of two-thirds of the capital stock actually paid in, is con-
tractual and not penal, is secondary to the liability of the corpora-
tion, and is similar to that of a surety or guarantor.

To render the directors of a corporation liable under P. S. 4307, making
such directors personally liable for all its debts contracted with
their assent in excess of two-thirds of the capital stock actually
paid in, it is not sufficient to show merely that the directors knew
of the amount of the indebtedness, which exceeded the statutory
limit, and that they knew of the creation of new debts, but there
must also be some act or omission on the part of the directors
relating to the particular transactions that increased the indebted-
ness beyond the prohibited limit.

Under P. S. 4307, the directors of a corporation cannot be held liable
for mere inattention to the business of the corporation and con-
sequent ignorance of its affairs, and so cannot be held liable for
mere silent assent to the incurring of indebtedness beyond the
legal limit.

APPEAL IN CHANCERY, Windham County, *Fish*, Chancellor.
Heard at Chambers, March 27, 1915, on the pleadings and find-
ings of fact by the chancellor.   Decree dismissing the bill with
costs.   The orators appealed.   The opinion states the case.

*Charles S. Chase* and *William R. Daley* for the orators.

The facts found show that the defendants did assent to the
creation of the indebtedness in excess of the legal limit.   *Keys*
v. *Union Pacific Tea Co.*, 81 Vt. 420; 2 Kent Com. No. 616;

*Walsh* v. *Pierce*, 12 Vt. 130; *Insurance Co.* v. *McCain*, 96 U. S. 84.

*Barber & Barber* and *C. Menzies Miller* for the defendants.

In order to make the directors liable under the statute it is necessary to show that they assented to the *creation* of the particular debts that constitute the prohibited excess. *Alison* v. *Cold Creek & N. R. Coal Co.,* 87 Tenn. 60, 9 S. W. 226; *Tradesman Pub. Co.* v. *Knoxville Car Wheel Co.,* 32 S. W. 1097; *Irvine* v. *McKeon,* 23 Cal. 472; *Mann's Mercantile Co.* v. *Smith,* 64 So. 929; *Hutchins* v. *Olcutt,* 4 Vt. 549; *Torrey* v. *Baxter,* 13 Vt. 452; *Farr* v. *Stevens,* 26 Vt. 299; *Collamer* v. *Langdon,* 29 Vt. 32; *Wait* v. *Brewster,* 31 Vt. 516; S. C. 46 Vt. 460; *Patterson* v. *Robinson,* 36 Hun. 622; *Slater* v. *Taylor,* 89 N. E. 271; *Edw. Hines Lumber Co.* v. *Marquarat,* 117 N. W. 666; *Lewis et al.* v. *Montgomery et al.,* 33 N. E. 880.

Munson, C. J.    This is a bill in chancery brought by the orators as creditors of the Grange Store Association, a corporation by voluntary association, against four of the twelve directors thereof, under a provision of P. S. 4307, now repealed, which reads as follows: "No debts shall be contracted by the corporation exceeding in amount two-thirds of the capital stock actually paid in, and a director assenting to the creation of an indebtedness exceeding such amount shall be personally liable for the excess." At the time the bills of the orators were contracted the Grange Store Association was owing debts in excess of two-thirds of the capital stock of the corporation actually paid in, in an amount exceeding the total amount of the orators' claims.

The association carried on a general mercantile business, with one Harris as manager of the business and treasurer of the corporation. Harris bought goods when and where he pleased, without consulting the directors, and without being inquired of by them regarding his purchases; but the defendants knew that he was buying on credit. He made annual statements of the assets and liabilities of the association, which were examined by the directors and afterwards accepted by the stockholders. These statements disclosed an indebtedness which, if created with the assent of the directors, would make them liable under the statute for several thousand dollars. But the names of the

creditors did not appear in these statements, and the defendants had no information from any other source as to who the creditors were.   The orators insist that these findings entitled them to a decree.   The defendants contend that there can be no liability under the statute without a showing that the director assented to the creation of the particular debt which is the basis of the claim.

The orators quote in support of their claim the language of the opinion in *Windham Provident Asso.* v. *Sprague,* 43 Vt. 502. The liability clause in that case differed materially from the one under consideration.   There the directors and stockholders of the corporation were made unconditionally liable to the creditors in case debts were contracted exceeding the limit.   Here the liability is imposed upon the directors who assented to the creation of the unauthorized indebtedness.

The orators' argument is in substance that the statute does not make the liability depend upon an assent given in any particular way; that one who has knowledge of the situation and the action being taken may give assent by keeping silent; that the fact that the defendants knew that goods were being purchased by the manager on credit, coupled with their knowledge of the excess indebtedness, was sufficient evidence of their assent.

It is held that the liability arising under statutes of this character is contractual and not penal, is secondary to the liability of the corporation, and is similar to that of a surety or guarantor.   *Farr* v. *Briggs,* 72 Vt. 225, 47 Atl. 793, 82 Am. St. Rep. 930; *Brown* v. *Ware,* 87 Vt. 121, 88 Atl. 507.   Our State has no decision upon the point now presented.   The question of assent was involved in *National Bank* v. *Paige,* 53 Vt. 452, but it did not become necessary to pass upon it.   It did not affirmatively appear in that case that the director expressly assented to the contraction of the debt in question, or that he expressly dissented therefrom; but he had been acting as director for over two years.   Plaintiff's counsel referred to the fact that for some years previous to and at the time the notes in question were given, the indebtedness of the corporation exceeded the statutory limit, and claimed that the director's assent was to be implied from these facts.   After disposing of the case upon other grounds, the court thought it proper to remark that the facts found did not seem to furnish sufficient evidence of an assent.

The defendants rely mainly upon *Lewis* v. *Montgomery,* 145 Ill. 30, 33 N. E. 880; a case which fully sustains their position. The court said that the liability, being contractual and not penal, was like that of a surety, and therefore *stricti juris;* that the words used in the statute should be interpreted according to their plain and obvious meaning, and should not be so extended by construction as to embrace cases not clearly within its terms; that the question was whether the directors were shown to have assented to the creation of the indebtedness which constituted the excess; and that such assent could be given only by some affirmative voluntary act on their part, or at least by some active participation or cooperation in the particular transactions out of which that indebtedness arose. It has even been held that the assent necessary to create the liability must be given by the director, not as an individual, but "in his capacity as director, acting concurrently with a majority of the official board." *Tradesman Pub. Co.* v. *Knoxville Car Wheel Co.,* 95 Tenn. 634, 32 S. W. 1097, 31 L. R. A. 593, 49 Am. St. Rep. 943.

The force of the word "assent" was considered in *Patterson* v. *Stewart,* 41 Minn. 84, 42 N. W. 926, 4 L. R. A. 745, 16 Am. St. 671, where a different conclusion was reached. There the act provided that if a corporation violated any of its provisions, and thereby became insolvent, the directors ordering or assenting to such violation should be liable for all debts subsequently contracted; and the violations complained of were the execution of accommodation paper in the name of the corporation and the loaning of corporate money. The complaint was, in substance, that the defendant was a director during the time of these transactions and did not object to them, but on the contrary, having full knowledge of the by-laws or resolutions authorizing them, acquiesced in the same; and this was held sufficient on demurrer. It was considered that the act required something more than mere negligence—something amounting to wilful, or at least intentional, violation of legal duty; but that the assent need not be express—that "if a director knew that a violation of law was being or about to be committed, and made no objection when duty required him to object, and when he had the opportunity of doing so, this would amount to 'assent.'"

The chancellor has made no express finding of assent or dissent. It is found that goods were being bought on credit to the knowledge of the defendants. It is found that annual state-

ments showing a large excess of indebtedness were examined by the directors. If we were to assume that these statements were submitted and examined at meetings of the board, this could hardly charge the defendants with knowledge of their contents. The authorities all indicate that mere negligence, or mere failure to attend the meetings of the board, will not make a director liable. We have here a board of twelve directors, and nothing to show that these defendants were present at the meetings. The finding that the statements were ''examined by the directors'' can hardly be taken to mean that they were examined by each one of the twelve at times other than the meetings. So if we were to hold the law to be as claimed by the orators, it might be difficult to give them relief upon these findings.

But if we were so to construe the findings as to charge the defendants with knowledge of an excess of indebtedness, it is doubtful if the orators could prevail on the case as thus made. The authorities, and a previous intimation of this Court, seem to require in addition some act or omission having relation to the particular transaction which increases the indebtedness. The only one of the cases above referred to which affords any support to the orators' claim is *Patterson* v. *Stewart,* and in that case there was full knowledge of corporate action, taken by by-laws and resolutions, authorizing the unlawful use of the corporate name and funds. This seems to indicate special authorization of the unlawful use in particular instances. Moreover, the claim of the plaintiff was stated in the opinion to be as follows: ''That it is the duty of a director to know what is being done in corporate matters; that it is negligence for him not to know,— and therefore he is conclusively presumed to have known,—and not objecting, he must be deemed assenting''; and this claim the court expressly repudiated.

We have seen that there is no express finding upon the question of assent. But this ground, as limited by our previous discussion of the law, seems to be covered by the chancellor's presentation of another and later phase of the case. It appears that the claim of the DeWitt Company consists of a note dated February 5, 1910, and an open account. It is stated that all the defendants were in ignorance of the existence of the open account of the DeWitt Company and of the claims of the other two orators when the association went out of business in October, 1910. It appears further that on February 16, 1910, the debt

represented by the note of the DeWitt Company was called to the attention of the defendants Ware, Goddard and Hopkins, but that defendant Joy did not know of its existence. The chancellor also states that "when the defendants named learned of the DeWitt obligation they made no protest in reference to the same and took no steps by way of repudiating the claim, and approved of such action as was taken in reference to a partial payment of the claim from funds obtained from the payment of a large account by the Brattleboro Retreat." This will aid us in construing the concluding portion of the chancellor's statement.

After stating the facts found, and his refusal to find that there was a composition agreement between the creditors, as claimed by the defendants, the chancellor proceeds: "Having found several debts established, the only question for consideration and determination is whether the defendants or any of them are liable to the orators or any of them under the statute by reason of their having assented to the indebtedness of the orators or any of them, which must be determined from the facts herein found and the law applicable to the case." Inasmuch as the chancellor had previously referred to the statute under which the action is brought, and spoken of the liability of the defendants as depending upon whether the debts were "created" by their assent, his reference here to their "having assented to the indebtedness" cannot be taken to indicate any misapprehension regarding the law.

The chancellor then proceeds: "The decision of this question depends in the first place on whether the acts of the manager are binding on the defendants in the sense that his assent to the indebtedness makes them liable"; and, secondly, "if the act of the manager does not bind the defendants, then their liability depends on their knowledge of the DeWitt claim, upon which said part payment was made." Upon this statement of the questions presented the chancellor dismissed the bill, and we see no ground on which the decree can be disturbed.

It is clear that the defendants cannot be held liable for mere inattention to the business of the corporation and consequent ignorance of its affairs. And if the defendants did not know of the open accounts until the association went out of business, and did not know of the debt represented by the note to the DeWitt Company until ten days after the note was given,

they cannot have actually assented to the creation of the indebtedness. The chancellor's second proposition manifestly refers to his previous statement that when the defendants learned of the DeWitt obligation they in no way repudiated the claim, but approved of the partial payment of it from the funds of the association. We know of no ground on which the defendants' participation in this transaction can make them chargeable under the statute.

*Decree affirmed and cause remanded.*