## NORTHWEST THEATRES CO. et al. v. HANSON.

(Circuit Court of Appeals, Ninth Circuit. February 16, 1925.)

No. 4364.

**1. Appeal and error ⬅249, 544(1)—Rulings during trial to court are not reviewable, unless exceptions were taken.**

Rulings made on the trial of an action at law to the court by stipulations are not reviewable, unless exceptions were taken at the time and are presented by a bill of exceptions.

**2. Corporations ⬅306—Directors who unite in commission of tort by corporation are individually liable therefor.**

Under Rev. Code Mont. 1921, § 9889, providing for the recovery of damages in an action for unlawful detainer including rent, directors of a corporation lessee, who united in refusing to surrender possession after the term and after default in payment of rent, may be joined as defendants, and are individually liable, jointly and severally, for the damages awarded, and directors who did not join in such refusal need not be made parties.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action at law by Walter H. Hanson against the Northwest Theatres Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

October 1, 1920, the Smead-Simons Building Corporation of Montana executed to the Minneapolis Trust Company a mortgage for $125,000, to secure a certain bond issue, upon a lot of land in the city of Missoula, of that state, on which it was at the time constructing a certain building, a part of which, according to its plans, was to be used as a theater, and which theater the building company on the 15th of January, 1921, leased to the Northwest Theatres Company, also a Montana corporation, for the term of five years from and after the date of the entering of the lessee into its possession as specified in the lease. The lease provided that the lessee, its successors and assigns, should pay to the lessor, its successors and assigns, as rent for the theater premises, $1,250 per month for the full term specified in the lease, payable in advance on the 1st day of each and every month—expressly providing, however, that the lessee would make an advance rental payment of $30,000 to the lessor upon entering into possession of the leased premises, one-half of which should be applied to the payment of the rental for the first year of the lease, and one-half thereof to the payment of the rental for the second year thereof, and further providing that upon the last-mentioned rental the lessor should pay to the lessee interest at the rate of 8 per cent. per annum, such interest to be paid monthly from the date of the advance rental payment provided for and calculated upon a full $15,000 for the first year of the lease, and thereafter to be calculated upon a monthly basis upon the amount of the advance rental to the credit of the lessee at the expiration of each month of the second year. The lease also contained the agreement that the lessee would at all times during the life of the lease, and any renewal thereof, operate and conduct the leased premises as a first-class theater and opera house, and assume the full and entire responsibility for, among other things, the care and upkeep of the premises for and during the full term of the lease and any renewal thereof. The lessee, for itself and its successors and assigns, further expressly covenanted with the lessor, its successors and assigns, among other things, as follows: To pay the rents specified in the lease, except that, in the event the premises should be so damaged by fire or water as to be untenable, and in case such damage by fire or water and, the resulting untenantability are not directly caused by the lessee, its successors or assigns, the lessee should be released from its obligation to pay the rent during that period; that it would not assign the lease or any part thereof, or sublet any part of the leased premises, without the written consent of the lessor, and that it would at the expiration of the term of the lease and its renewals quietly and peaceably yield and surrender the premises and certain scheduled personal property unto the lessor, its successors or assigns, in as good condition as they then were, or might be put by the lessor during the term of the lease, reasonable wear and tear and damage by the elements alone excepted. The lease also contained a provision for its renewal at the option of the lessee, its successors or assigns, for a term of seven years, at the same rental and upon the same terms as therein specified, providing such renewal be made and provided for at least nine months before the expiration of the five-year term.

The $125,000 so loaned by the Minneapolis Trust Company to the building company not being sufficient to complete the building, the latter company, being in default respecting that mortgage, sought an additional mortgage loan from the trust company of $150,000 with which to complete the building. The trust company made the additional loan secured by a second mortgage on the property—the lessee expressly relinquishing its claim that its lease was superior to or on a parity with the first mortgage, and expressly agreeing "that said mortgage or deed of trust is prior to and superior to said lease and any rights claimed thereby, and that said lease is subordinate to and subject to and an incumbrance on said building secondary to said mortgage or deed of trust," and the trustee expressly agreeing that for the period of one year following any sale under the foreclosure of either of the mortgages, if any such foreclosure should occur, the lessee should be entitled as against the holders of the mortgages to the possession of the theater upon the prompt payment of the rentals, and that such possession should not be disturbed through the holders of said mortgages by reason of the appointment of any receiver in such foreclosure proceedings. It was further agreed between the respective parties that the difference between the cash rental to be paid for the theater up to January 1, 1924, and the reserved rental of $1,250 provided for in the lease should be charged against the advance rental therein mentioned. The building corporation expressly approved

and consented to those arrangements, and to such extension of the lease as to exhaust the balance of the advance rent for the theater, and further expressly agreed that if for any reason, whether on account of the foreclosure of the mortgage or otherwise, the building corporation should be unable to secure to the Theatres Company the possession of the theater for a sufficient length of time to permit that company to exhaust the balance of advance rent, then any balance remaining outstanding as a credit to the Theatres Company should be repaid by the building corporation, provided that, whenever the two mortgages should be paid in full, the Theatres Company should immediately become entitled to the application of the unapplied balance of the advance rent.

The record shows that both of the mortgages were foreclosed, the two suits being consolidated for trial, resulting in a decree of foreclosure, under which the mortgaged property was sold and conveyed to the trust company, which company later sold and conveyed it to the present defendant in error. The Theatres Company continuing in possession of the theater part of the building, and being in default in the payment of the rent due therefor, the defendant in error brought the present action under and by virtue of the Unlawful Detainer Act of the state of Montana for the recovery of the premises in question and for damages, after demand made by the plaintiff in the case for the restitution of such premises and the payment of the rent due therefor, and the refusal to comply with such demand on the part of the present plaintiffs in error, who constitute four of the eight directors of the Theatres Company, and its active manager—the plaintiff in error Turner. The other four directors of the company were not made parties to the action because of their willingness to comply with the demands of the present defendant in error.

Harry H. Parsons, Walter L. Pope, and Howard Toole, all of Missoula, Mont., and Charles R. Leonard, of Butte, Mont., for plaintiffs in error.

John P. Gray, of Cœur d'Alene, Idaho, Dan M. Kelly, of Butte, Mont., and Mulroney & Mulroney, of Missoula, Mont., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). [1] The record shows that the case came on for trial before the court below July 8, 1924, a jury having been expressly waived by the parties, and that not a single exception complained of by any assignment of error was taken during the course of the trial. That being so, even if there had been any error committed by the court in any of its rulings during the trial, they cannot be here considered, not only because of provisions of the federal statute, but of numerous decisions of the Supreme Court, of this court, and many other federal courts. See sections 649, 700, Revised Statutes (Comp. St. §§ 1587, 1668), and sections 1266–1268 Compiled Statutes of 1918; Norris v. Jackson, 9 Wall. 125, 19 L. Ed. 608; Cooper v. Omohundro, 9 Wall. 65, 22 L. Ed. 47; Town of Martinton v. Fairbanks, 112 U. S. 670, 5 S. Ct. 321, 28 L. Ed. 862; Lehnen v. Dickson, 148 U. S. 71, 13 S. Ct. 481, 37 L. Ed. 373; Pabst Brewing Co. v. E. Clemens Horst Co. (C. C. A.) 264 F. 909; Oakland Water Front Co. v. LeRoy (C. C. A.) 282 F. 385; Dunsmuir v. Scott, 217 F. 200; United States v. Columbia, etc., R. R. Co. (C. C. A.) 274 F. 625; United States Shipping Board Co., etc., v. Drew (C. C. A.) 288 F. 374; Wear v. Imperial Window Glass Co., 224 F. 60, 139 C. C. A. 622; Ewert v. Thompson (C. C. A.) 281 F. 449; Luther v. Gibson, 196 F. 203, 116 C. C. A. 35.

The record shows that some time after the conclusion of the trial the court decided the case in an opinion dated July 14 and filed July 15, 1924, commencing with the words, "The court finds for the plaintiff," and ending with the words, "If either party requires formal findings, they may prepare and submit them on due notice." Subsequently the plaintiffs in error filed a large number of exceptions to the decision of the court, and to the reasons therefor assigned by the court in its opinion, none of which exceptions are we authorized to consider for the reason already stated.

Section 9889 of the Revised Codes of Montana of 1921, under which the action was brought, provides, among other things, as follows:

"A tenant of real property or mining claim, for a term less than life, is guilty of unlawful detainer:

"1. When he continues in possession, in person or by subtenant, of the property, or any part thereof, after the expiration of the term for which it is let to him, without the permission of the landlord, or the successor in estate of his landlord, if any there be. * * *

"2. Where he continues in possession, in person or by subtenant, without permission

of his landlord, or the successor in estate of his landlord, if any there be, after default in the payment of rent, pursuant to the lease or agreement under which the property is held, and three days' notice, in writing, requiring its payment, stating the amount which is due, or possession of the property, shall have been served upon him, and if there be a subtenant in actual occupation of the premises; also upon such subtenant. * * *

"3. When he continues in possession, in person or by subtenant, after a neglect or failure to perform other conditions or covenants of the lease or agreement under which the property is held, including any covenant not to assign or sublet, than the one for the payment of rent, and three days' notice, in writing, requiring the performance of such conditions or covenants, or the possession of the property, shall have been served upon him, and if there be a subtenant in actual occupation of the premises, also upon such subtenant. * * * "

[2] By his amended complaint the plaintiff below set forth the lease of January 15, 1921, and alleged the entry of the Theatres Company into the possession of the theater premises under the lease, the execution of the two mortgages to the trust company, their foreclosure, the sale of the mortgage property to the latter company under the decree of foreclosure, from which no redemption was made, the subsequent conveyance of all the property so sold to the purchaser, the subsequent agreement of the plaintiff to purchase the property from the trust company, and its conveyance to him pursuant to that agreement, the provision of the lease to the effect that the right of the Theatres Company to occupy the theater premises should terminate one year from and after the date of sale under foreclosure of either of the mortgages mentioned in the lease, and further alleged, in substance, that on the 15th of November, 1923, the plaintiff notified the defendants that he had contracted for the purchase of the building and was entitled to the immediate possession thereof, which possession he demanded, and that thereafter, and on or about December 26th of the same year, he caused a notice to be served upon each of the defendants, together with the other four directors of the Theatres Company, notifying them of his contract of purchase, and of his right of possession to the building, and demanding the delivery of such possession to him, and also notifying them that, in the event of their failure to comply with his demand, they would be held responsible for the damages sustained by

the plaintiff, as well as for the value of the use and occupation of the theater premises during the time the plaintiff was entitled thereto; that the plaintiff has been advised by the four directors of the Theatres Company who were not made defendants to the action of their willingness to surrender the possession of the property to him, for which reason they were not made parties.

The complaint also alleged the monthly value of the use and occupation of the theater premises by the defendants, and further alleged that in the building there is a central heating plant, the heat for which is furnished by the central heating plant of the city of Missoula, which heat is purchased by the plaintiff, and that the defendants have been heating the theater premises since November 15, 1923, with heat which has come into the building through the common delivery pipe; that the light and power delivered to the building is delivered through one service, the meter for which is in the possession of the defendants; that the said heat, light, and power used by the defendants, and paid for by the plaintiff, plaintiff estimates at the sum of $914.05, from November 15, 1923, to January 31, 1924; and that the plaintiff has been damaged and will in the future be damaged in the sum of $266 per month for such use made by defendants of such heat, light, and power.

The facts of the case having, by stipulation of the respective parties, been left to the determination of the court, its general finding for the plaintiff necessarily established the truth of all the material facts alleged in the complaint. And since the statute (section 9901, Rev. Codes of Montana, 1921) expressly declares that, if the proceeding be for an unlawful detainer after neglect or failure to perform the conditions or covenants of the lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall assess the damages occasioned to the plaintiff by any such unlawful detainer alleged in the complaint, and proved on the trial, and find the amount of any rent due, if the alleged unlawful detainer be after default in the payment of rent, and shall be rendered against the defendant, guilty of such unlawful detainer, for three times the amount of the damages thus assessed, and of the rent found due, it is impossible, we think, to hold the judgment here complained of erroneous in any respect, unless we are prepared to sustain the contention of the plaintiffs in error that they were not guilty of any unlawful detention of the theater premises.

As the case comes to us we must take it that the Theatres Company was in actual possession of the theater premises and that the plaintiff in error Turner was its manager, and the other four plaintiffs in error (four of its directors), each of whom refused to surrender the possession of the premises in question, notwithstanding the willingness of the other four directors to surrender them. Under such circumstances we think that the law is that the plaintiffs in error were rightly adjudged to have committed the alleged and proved unlawful detainer. The five, in effect, combined in the unlawful, wrongful withholding of the premises from the true owner. Such act was plainly a tort. In the case of Centennial Brewing Co. v. Rouleau et al., 49 Mont. 490, 500, 143 P. 969, 972, the Supreme Court of Montana said of its statute: "A holding over without the permission of the landlord is an essential element of the wrong defined and denounced by the statute." In that case the court further held that, where unlawful detainer is alleged and proved, and damages therefor awarded, judgment for treble the amount of the award follows as a matter of course, and that the court has no discretion to adjudge otherwise.

In St. Louis Brewing Ass'n v. Niederluecke et al., 102 Mo. App. 303, 308, 76 S. W. 645, 647, it was held that: "Individuals who are acting in concert pursuant to a general design to withhold premises from the one entitled to possession may be joined in an action of unlawful detainer." In section 2536 of Fletcher, Cyc. Corporations, it is said: "Generally there is no question as to liability of corporate officers for torts, provided the officer was so connected with the tort as to bring him within the rule. If the tort is committed by the officer sought to be held liable, then of course no question arises. So if he is one of several officers or agents, all of whom actively participated in the tort, there is no question as to his liability. * * *" And in the next section, 2537: "Liability of officers for torts, where they act together, is joint and several. The rule is the same as in the case of any other tort, and is so elementary as not to require further consideration, except to state that one director is not always liable merely because another director who has committed a tort is liable. * * *"

In Hitchcock v. American Plate Glass Co., 259 F. 948, 952, 953, 171 C. C. A. 24, 28, 29, the Circuit Court of Appeals of the Third Circuit said: "The director of a corporation is ordinarily liable only for those torts which he himself commits. But his liability is not limited to tortious acts which he actually and physically commits; it extends as well to tortious acts which he actually brings about. Where a director or manager of a corporation—who sustains to the corporation the relation of master or principal in the sense of being its dominating force—himself commands the commission of a tort by the corporation, though he does it as an officer and in the name of the corporation, he is individually liable. National Cash Register Co. v. Leland, 94 Fed. 502, 508, 37 C. C. A. 372. This is so because, in an action for infringement of letters patent, an individual, who has inspired a tort and has participated in its commission, is a joint tort-feasor, and must, on general principles of law and by analogy with other torts, yield to the person whose rights he has invaded the profits which he has gained thereby. When the joint tort is established, the individual joint tort-feasor cannot defend on the plea that the acts complained of were solely the acts of the corporation of which he was an officer, and that whatever was done by him was done only in that capacity. An executive officer of a corporation 'cannot shield himself behind an artificial and sometimes irresponsible creation from the consequences of his own acts, even though performed in the name of an artificial body.'"

In the case of Patterson v. Minnesota Mfg. Co., 41 Minn. 84, 94, 42 N. W. 926, 929 (4 L. R. A. 745, 16 Am. St. Rep. 671), that court said: "If a director knew that a violation of law was being, or about to be, committed, and made no objection when duty required him to object, and when he had the opportunity of doing so, this would amount to 'assent.'" And in the case of Robinson v. Moark-Nemo Consol. Mining Co., 178 Mo. App. 531, 163 S. W. 885, there will be found cited many cases sustaining the general rule that all persons who direct or wrongfully contribute to the commission of a trespass or other like offense or assent to its commission are equally liable to the person injured.

What the court held in the case of Wootton Land & Fuel Co. v. John, 60 Colo. 305, 153 P. 686, much relied upon by the plaintiffs in error, was that the vice president of a corporation, which ousted the plaintiff in the case from land owned by him, which ouster was not wanton or malicious, but under a claim of title by the corporation made in good faith, the vice president acting only for it, was not individually liable for damages resulting from the ouster—the plaintiff in the case claiming rents and profits as the proper measure of damages, thereby making

the action one of an implied contract, rather than one of tort. We think that case inapplicable to the present one.

The judgment is affirmed.